**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**UNIQUE FINANCIAL CONCEPTS, INC., Frederick Hollander, Ernest J. Patti and Nicholas D. DeAngelis, Defendants.**

**No. 98–7147CIV.**

United States District Court, S.D. Florida.

Nov. 19, 1998.

Gary E. Jackson, District Trial Counsel, U.S. Securities and Exchange Commission, Philadelphia District Office, Philadelphia, PA, for Plaintiffs.

J.B. Grossman, Adorno & Zeder, Boca Raton, FL, for Defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

HIGHSMITH, District Judge.

THIS CAUSE is before the Court on the following motions: (1) Plaintiff's Motion for Preliminary Injunction; (2) Defendants' Emergency Motion to Dismiss for Lack of Subject Matter Jurisdiction; and Defendants' Motion to Vacate the Temporary Restraining Order. The Court held hearings on the foregoing motions on October 30, 1998, November 6, 1998 and November 9, 1998.

The Securities and Exchange Commission ("SEC") brought this action to prevent Defendants Unique Financial Concepts, Inc. ("Unique"), Frederick N. Hollander, Ernest J. Patti and Nicholas DeAngelis[1] from allegedly continuing to defraud public investors in connection with the offer and sale of interests in a purported trading program involving options on foreign currency through the foreign currency market known as the Forex. For the following reasons, the SEC's Motion for Preliminary Injunction is granted and Defendants' Emergency Motion to Dismiss for Lack of Subject Matter Jurisdiction and Emergency Motion to Vacate Temporary Restraining Order are denied.

### FINDINGS OF FACT

Unique was established in October of 1997 by Defendants Hollander and Patti. Unique offered investors the opportunity to invest in foreign currency options.[2] Unique advertised its purported trading

---

1. Frederick Hollander and Ernest Patti are Unique's founders and Nicholas DeAngelis serves as its lead sales representative.

2. No registration statements were received by the SEC in relation to the investment product offered and sold by Unique. Government Exhibit 19.

program on national cable television stations, in major newspapers and on the Internet. Unique's advertisements, which were created and/or reviewed by Hollander and Patti, promised large returns based on minimal investments. Deposition of Patti at 128–131, 134–136; Deposition of Hollander at 139–141, 165–172. A classified ad that was run in a national newspaper proclaimed that a 10k investment on 5/9/97 could turn into 70k by 5/23/97. Government Exhibit 3. A television commercial claimed that $5000, if invested properly in the Japanese Yen, would result in a return of $35,000. Government Exhibit 4. Unique's Internet website also promised incredible returns in a short period of time. The site claimed that an actual investment of $5000 on May 13, 1997 had returned $62,500 in 13 days. Government Exhibit 5. The advertisements provided a toll-free number for interested investors to call.

Potential investors who telephoned Unique were placed in contact with a sales representative. The sales representative would send a packet to the interested investor containing an offering document describing the Forex market, a customer agreement and a disclosure of risk statement. Government Exhibit 7. The customer agreement, which Unique utilized until August of 1998, provided in pertinent part: [3]

> Client funds will be initially deposited into Client segregated omnibus account (*sic*) in one or more banks and thereafter transferred to a holding bank. The current holding bank is Barclays Bank PLC., located in Nassau, Bahamas. Holding banks status may change at any time as Advisor deems appropriate....

By executing this agreement, Client authorized (*sic*) U.F.C. in its sole discretion to use the total funds on deposit in the omnibus account which includes the funds of the undersigned to execute single trades or transactions and to apportion the gains, losses, commissions, and clearing expenses proportionally to each account. The result of each trade will be apportioned and applied proportionally (per unit) to all accounts open on the trade and rounded down to the nearest U.S. dollar.

> U.F.C. will utilize the services of one or more trading professionals which possess trading expertise in the Interbank market, the selection and retention of which is in the sole discretion of U.F.C. U.F.C. does not guarantee the success of any particular trade or trading strategy or the ability of the trading professional to meet or exceed any prior trading history.

Government Exhibit 7 at 3.

Unique would send a courier to pick up the documents and an initial investment from the investor. Patti deposited investors' funds into Unique's bank account at Southern Bank in Fort Lauderdale, Florida.

The second phase of Unique's scheme came into effect upon receipt of the investors' funds. DeAngelis and other Unique sales representatives "coached" and advised investors concerning which currencies they should invest in and how many "puts" and "calls" they should purchase. Transcript of Preliminary Injunction Hearing dated October 30, 1998, Testimony of John Miller at 39 and Testimony of Robert Lowe at 69–70; Transcript of Preliminary Injunction Hearing dated November 6, 1998, Testimony of Jose Alonso at 8.[4] The

---

**3.** Unique modified its customer agreement and deleted the quoted language in late August 1998 after it was under investigation by the SEC. Testimony of Patti at 39; *See also* Government Exhibit 37 (Customer Agreement executed on September 30, 1998). Defendant Ernest Patti testified that he was advised by his attorney to remove the language from the customer agreement because it could support

a finding that Unique's investment opportunities were securities. *Id.*

**4.** All citations to the testimony of John Miller and Robert Lowe are to the transcript of the hearing dated October 30, 1998. All citations to the testimony of Jose Alonso are to the transcript of the hearing dated November 6, 1998.

sales representatives also reassured the investors that they could not lose any money. John Miller was told that he might not make money but that he "wouldn't lose by going with the call and the put" *Id.* at 39. Unique's sales representative told another investor, John Lowe, that he would have an exclusive relationship with Unique and they were going to "make each other some money." Testimony of Lowe at 67. When Jose Alonso asked about the risks he was told: "Don't worry about it, I told you before we cover the two sides of the coin by splitting the money. . ." Testimony of Alonso at 17. The investors relied upon Unique's advice because they were unfamiliar with Forex and were unsophisticated investors. Testimony of Miller at 41; Testimony of Lowe at 70; Testimony of Alonso at 13.

The next step of Unique's scheme consisted of transferring the investor to the "compliance officer," Skye Smith. Ms. Smith recorded her conversations with the investors. Transcript of Preliminary Injunction Hearing dated November 9, 1998, Testimony of Smith at 70–77 ("Testimony of Smith"). She recited the terms of the investment from a trade ticket and requested the investor's assent on tape. *Id.* at 77. Ms. Smith also requested that the investor acknowledge that he or she had ultimate control over the investment and understood the risks.[5] Defendants' Exhibit H.

After an investor made an initial investment, Unique turned up the pressure. DeAngelis or another Unique sales representative would call the investor and request more money or indicate that there was another incredible investment opportunity in another type of currency which required immediate action. *See e.g.* Testimony of Miller at 42–44. The representative would send a courier to pick up the investor's check. *Id.* at 45.

At some point, after the investor invested thousands of dollars, Unique's tactics would change. When an investor called to monitor or alter his or her investment, the sales representative was unavailable and would not, in most instances, return the phone call. John Miller tried to call DeAngelis at least ten times. Testimony of Miller at 48. Robert Lowe called to check on his investment five times before he was connected with a sales representative. Testimony of Lowe at 75. Thereafter, the sales representative would inform the investor that he had suffered significant losses. DeAngelis told John Miller that he had incurred substantial losses because "the market didn't go the way I planned it." Testimony of Miller at 47.

From October 1997 through October 22, 1998, Unique raised approximately $6,575,714 from hundreds of investors using the aforementioned scheme.[6] Government Exhibit 16, 17, 18. *See also* Affidavit of Mark Dowdell. Of this amount, $2,489,810 was wired to the Bahamas. The funds were allegedly sent to Nassau Bay Clearing which was responsible for executing the trades. Government Exhibits 16, 17, 18. There is, however, no independent evidence that Nassau Bay Clearing actually executed trades on behalf of Unique's clients. Unique has failed to produce any credible evidence in support of its contention that Nassau Bay Clearing, and formerly Capital Management, Inc. ("CMI") and Forex International, placed trades on behalf of its investors.[7]

In fact, no agreements evidencing the relationship between Unique and Nassau Bay Clearing and/or Unique and CMI or Forex International have been produced.

---

5. Investors testified that they were told what to say by a sales representative for the purpose of compliance. *See e.g.* Testimony of Alonso at 8.

6. This Court entered a Temporary Restraining Order on October 22, 1998 which halted Unique's business operations.

7. The SEC, during its investigation, contacted the Securities Board of the Commonwealth of the Bahamas to inquire whether CMI and/or Forex International were registered exchanges. The Securities Board indicated that there are no registered exchanges in the Bahamas. Government Exhibit 20.

Patti testified that neither Unique nor any of the individual Defendants have copies of any of the contracts in their possession. Transcript of Preliminary Injunction Hearing dated November 6, 1998, Testimony of Patti at 48–51 ("Testimony of Patti"). He further stated that he has been unsuccessful in his attempts to obtain copies of the agreements. *Id.* Patti testified that he was told by Nassau Bay Clearing, CMI and Forex International that the agreements must remain in the Bahamas in accordance with Bahamian law.[8]

While Unique has provided open option reports, which detail the purported trades and client accounts, there is no evidence to substantiate the veracity of said reports. Defendants' Exhibits A, B and C. There are no transaction or wire verifications indicating the disposition of the funds after they were wired to Nassau Bay Clearing. Trade confirmations were produced; however, the confirmations were mailed from Unique's office and, apparently, were not independently sent out by the clearinghouse. Thus, no documents have been provided reflecting that Nassau Bay Clearing or any other clearinghouses actually placed the trades.

Skye Smith testified that she placed trades on a daily basis with Nassau Bay Clearing on behalf of Unique's clients. Testimony of Smith at 84. But, she could not recall the surnames of any of the individuals with whom she placed the trades. Testimony of Smith at 64, 120. Ms. Smith also testified that the trades were monitored utilizing green sheets. Government Exhibit 43. However, the evidence reflects that the green sheets were prepared by Unique and are not supported by any other documentation except the unsubstantiated option reports. Consequently, at this juncture Unique has failed to produce one scintilla of independent evidence in

support of its contention that investors' funds were invested in foreign currency options by clearinghouses in the Bahamas.

As ·for the remaining $3.3 million, the evidence reflects that Unique has utilized it for business operations, advertising, luxury car leases, commissions paid to employees, loans to the principals and salaries. In addition, approximately, $644,000 of investors' funds appear to have been used to pay new investors. *Id.* This Court acknowledges that Unique is entitled to retain a portion of investors' funds as commissions if trades were actually placed. Unique has not provided any accounting of the amounts that it claims it is entitled to as commissions. Notwithstanding; it appears that Unique retained excessive amounts of investors funds because only approximately 38% of the total amount received was transferred to the Bahamas for alleged trading. *See* Affidavit of Mark Dowdell.

### DISCUSSION

**I. The Investments Offered and Sold By Unique Are Securities.**

■ The first issue that must be addressed is whether the investments offered and sold by Unique are securities under federal securities law. Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define the term "security" to include, *inter alia,* "any investment contract." The United States Supreme Court defined an "investment contract" in *SEC v. W.J. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In that case, the Supreme Court set forth a three-part test for determining the existence of an investment contract: (1) an investment of money; (2) in a common enterprise; (3) leading the investor to expect profits solely from the efforts of a third party. *Id.* at 298–299, 66 S.Ct. 1100.

8. This Court finds that Ernest Patti lacks credibility. His statement that Unique has never possessed a copy of the agreement with Nassau Bay Clearing or with any of the prior clearing houses such as CMI and Forex International is highly suspect. Defendants do not cite any case law in support of their contention that the "laws of the Bahamas" require that the contract stay in Nassau. Consequently, at this stage, the Court concludes that the contract may be damaging to Defendants and that they may be purposefully avoiding its production.

The first prong of the *Howey* test is clearly satisfied in this case and hardly warrants discussion. All that is required is that the investor give up some tangible and definable consideration. *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 560, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Stowell v. Ted. S. Finkel Investment Services,* 489 F.Supp. 1209, 1220 (S.D.Fla.1980). The funds which investors sent to Unique in response to the advertisements promising exorbitant returns are undeniably investments.

The second prong of *Howey* requires the existence of a common enterprise. "A common enterprise exists where the fortunes of the investor are interwoven with and dependant on the efforts and success of those seeking the investment or of third parties." *T.J. Eberhardt v. Waters,* 901 F.2d 1578 (11th Cir.1990). The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return and are attracted to the investment solely by the prospects of a return. *Id.* (citing *SEC v. Koscot,* 497 F.2d 473, 478–79 (5th Cir. 1974). The fact that an investor's return is independent of that of other investors in the scheme is not decisive. *Id.*

The customer agreements utilized by Unique from its inception until August of 1998 clearly state that the investors' monies are pooled and gains and losses apportioned amongst the individual investors. The fact that Unique subsequently revamped its customer agreement or that Unique's trading program may not actually have functioned in that fashion is irrelevant.[9] Courts have repeatedly held that what investors were offered is dispositive in determining whether an investment contract exists. *See e.g., Howey,* 328 U.S. at 301, 66 S.Ct. 1100 ("The Securities Act

prohibits the offer as well as the sale of unregistered non-exempt securities. Hence it is enough that the [defendants] merely offer the essential ingredients of an investment contract."); *SEC v. Lauer et al.,* 52 F.3d 667, 670 (7th Cir.1995)("It is the representations made by promoters, not their actual conduct, that determines whether an interest is an investment contract…"). Therefore, Unique's pre-August 1998 customer agreement supports the existence of a common enterprise.

Several other factors are present in this case which lead to the conclusion that commonality is present. Unique's clients were not in a position to assume or maintain any substantial degree of control over their investment. *See T.J. Eberhardt,* 901 F.2d at 1580. Therefore, it is clear that the fortunes of the investors were entirely dependant on the expertise of Unique. *See Plunkett v. Francisco,* 430 F.Supp. 235 (N.D.Ga.1977)(holding that commonality was present because the fortunes of all of the investors were tied to the expertise and efforts of the promoter). Accordingly, the common enterprise prong is satisfied.

The third prong of the *Howey* test turns on whether the investor expected profits solely from the efforts of another. In this Circuit, the crucial inquiry is generally the amount of control that the investor retains under the written agreement. *Albanese v. Florida National Bank,* 823 F.2d 408 (11th Cir.1987). If the investor retains the ability to control the profitability of his investment the agreement is not a security. *Id.* at 409. However, even if the language of the contract grants the investor sufficient control over the investment, a security may still exist if the control is illusory. *Id.* at 412; *See also, Gordon v. Terry,* 684 F.2d 736, 741 (11th Cir.1982); *Williamson v. Tucker,* 645 F.2d 404, 419–424 (5th Cir. 1981).[10]

---

**9.** Unique's modified customer account agreement, without the pooling and apportionment provisions, bears little significance to the commonality determination because the changes appear to have been made in an attempt to circumvent the application of federal securities law.

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

In the instant case, the language of the customer account agreement that was utilized by Unique from its inception until August 1998, provided that Unique in its sole discretion would exercise trades and apportion gains and losses. There was no language relegating discretion concerning the investment to the investor. The agreement was subsequently modified to include such a provision and investors were told verbally during the "compliance" call that any decisions concerning the investment was the investors'. However, the evidence clearly reveals that any purported control was illusory. Investors did not possess the ability to monitor their investments let alone control the profitability. Accordingly, the third and final prong of the *Howey* test is satisfied and the investment opportunities offered by Unique are investment contracts and thus securities under federal law.

■ Defendants argue that the investments offered by Unique are currency transactions and thus exempt from regulation. Specifically, Defendants argue that off-exchange trading involving currency transactions falls within the jurisdiction of the Commodities Futures Trading Commission ("CFTC") and not the SEC. *See* Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq.* Defendants further point out that the Treasury Amendment to the Commodity Exchange Act, 7 U.S.C. § 2(ii) exempts off-exchange foreign currency options from CFTC regulation. Therefore, argue Defendants, off-exchange foreign currency options trading is not subject to regulation by any governmental body including the SEC.

Defendants' argument is misplaced. Nothing in the CEA or the Treasury Amendment limits, preempts or precludes the SEC from regulating the investment opportunity offered by Unique. The investments offered by Unique appear to be fractional interests in a currency trading program. No evidence has been presented indicating that the investors were offered or purchased a direct ownership interest in foreign currency option contracts. Rather, investors were offered and purchased an interest in an investment contract involving foreign currency options. Therefore, this Court concludes that the SEC has jurisdiction in this case.[11]

## II The SEC Has Satisfied The Prerequisites For a Preliminary Injunction Under Federal Securities Law.

■ Under Section 20(b) of the Securities Act of 1933 ("Securities Act") and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), the Securities and Exchange Commission ("SEC") is entitled to a preliminary injunction when it establishes: (1) a prima facie case of previous violations of federal securities laws; and (2) a reasonable likelihood that the wrong will be repeated.[12] *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir.1975); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972). Notably, there is no requirement that the SEC demonstrate irreparable injury or lack of any adequate remedy at law. *SEC v. Scott*, 565 F.Supp. 1513, 1536 (S.D.N.Y.1983).

---

11. Based on the evidence presented thus far, it appears that Defendants intentionally created documents and made statements to investors in an attempt to create a sequence of events which removed them from the jurisdiction of any regulatory agency.

12. Section 21(d)(1) of the Exchange Act provides in pertinent part:

Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision under this title, the rules or regulations thereunder, ... it may in its discretion bring an action in the proper district court of the United States ... to enjoin such acts or practices, and upon a proper showing a permanent or temporary restraining order shall be granted without bond.

15 U.S.C. § 78u(d)(1). Section 20(b) of the Securities Act contains substantially the same language. 15 U.S.C. § 77t(b).

## A. Prima Facie Case of Previous Violations of Federal Securities Law.

Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b–5 prohibit the fraudulent offer, purchase or sale of securities and proscribe, *inter alia*, the employment of any device, scheme or artifice to defraud. The provisions also prohibit untrue statements of material fact or omission of a material fact in connection with the offering or sale of securities. The anti-fraud provisions are only violated, however, if the offeror/seller acted with scienter. *Id.* In other words, the offeror/seller must have acted with the intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

The SEC has made out a prima facie case of violations of the anti-fraud provisions. The evidence indicates that of the approximately 6.5 million dollars raised from investors, $2,489,810 or approximately 38% was sent to the alleged clearinghouses in the Bahamas that were responsible for executing the trades. There is, however, nothing to support Defendants' contention that foreign currency options were in fact purchased utilizing the monies. Moreover, the uncontroverted evidence reflects that a significant portion of investors' funds remained in Unique's bank account and were utilized to pay various business expenses or to compensate new investors. Therefore, at this stage of the litigation, it appears as though Defendants either misused or converted investors' funds and have used an artifice to defraud.

The SEC has also established that Defendants made material representations and omissions to investors. Unique's advertisements and website stated and implied that investors could achieve incredible returns in short periods of time. However, no evidence has been presented which lends credence to these representations. In addition, Unique's sales staff misrepresented the risks and potential returns of the investments.

The SEC has also demonstrated that the Defendants acted with scienter. The evidence reflects that Defendants Hollander, Patti and DeAngelis were all intimately involved in Unique's operations. Hollander, as Unique's principal, prepared and reviewed the promotional materials and handled the training of sales representatives. Patti established and controlled Unique's bank account and wired investor's funds to the Bahamas. DeAngelis served as a sales representative and mislead investors concerning the risks and returns of the investments. The actions of the individual Defendants results in a finding that Unique also possessed the requisite scienter. *See SEC v. Manus*, [1981–1982 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,307 (S.D.N.Y.1981)("a corporation can only act through the persons associated with it").

The SEC has also established that Defendants have violated the registration provisions of federal securities law. Section 5(a) and 5(c) of the Securities Act prohibit persons from, directly or indirectly, offering or selling securities in interstate commerce which are not registered with the SEC, unless an exemption from registration is available. The elements of a prima facie section 5 violation are: (1) absence of an effective registration statement covering the securities in question; (2) the offer or sale of the securities; and (3) the use of the mails, or any means or instruments of transportation or communication in interstate commerce in connection with the sale or offer. *Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir.1987).

Defendants offered and sold at least 6.5 million dollars in investment contracts to hundreds of investors through the use of the mail and/or federal express. There were no registration statements filed or in effect during the course of the offering and/or sales. Consequently, the elements of a prima facie section 5 violation are easily satisfied.

**B.  A Reasonable Likelihood That The Wrong Will be Repeated.**

The second prong of the test for the issuance of a preliminary injunction is that a reasonable likelihood exists that the wrong will be repeated.  The following factors are relevant to this determination: the character of the violation, the degree of scienter involved and whether a defendant has acknowledged the wrongfulness of his conduct and given sufficient assurances that it will not be repeated.  *See SEC v. Savoy Industries, Inc.,* 587 F.2d 1149 (D.C.Cir.1978); *SEC v. Commonwealth Chemical Securities,* 574 F.2d 90, 100–01 (2d Cir.1978).

The second prong is satisfied in this case.  Defendants have not acknowledged any misconduct and have given no assurances that they will cease violating federal securities law.  In fact, as discussed above, Defendants take the position that they are not subject to federal securities law.  In addition, this Court notes that Defendants have in the past been enjoined in other unrelated cases from violating securities laws yet it appears that they have continued to do so.  Government Exhibits 29–32. Accordingly, this Court concludes that there is a reasonable likelihood that the wrong will be repeated.

### CONCLUSION

In summation, the investments offered by Unique are investment contracts and thus securities under federal securities law.  The SEC has made out prima facie cases of violations of the anti-fraud and registration provisions of federal securities law.  In addition, the SEC has demonstrated that there is a reasonable likelihood that the wrong will be repeated. Therefore, The SEC has satisfied both requirements for the issuance of a preliminary injunction pending the outcome of this litigation.

Accordingly, it is

ORDERED AND ADJUDGED that the SEC's Motion for Preliminary Injunction is GRANTED and Defendants' Emergency Motion to Dismiss for Lack of Subject Matter and Emergency Motion to Vacate the Temporary Restraining Order are DENIED.

NOW THEREFORE,

### I.

IT IS HEREBY ORDERED that, pending the final determination of the Commission's action on the merits, defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are preliminarily enjoined from, directly or indirectly, singly or in concert, making use of any means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the offer or sale of any security, to:

(a) employ any device, scheme or artifice to defraud;  or

(b) obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;  or

(c) engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser;

in violation of Section 17(a) of the Securities Act, 15 U.S.C. 77q(a).

### II.

IT IS HEREBY ORDERED that, pending the final determination of the Commission's action on the merits, defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are preliminarily enjoined from, directly or indirectly, singly or in concert, making use of any means or

instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange, in connection with the purchase or sale of any security, to:

(a) employ any device, scheme or artifice to defraud; or

(b) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person;

in violation of Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), or Rule 10b–5, 17 C.F.R. 240.10b–5, thereunder.

### III.

IT IS HEREBY ORDERED that, pending the final determination of the Commission's action on the merits, Defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are preliminarily enjoined from, directly or indirectly, singly or in concert, making use of any means or instruments of transportation or communication in interstate commerce, or of the mails, to:

(a) sell any security through the use or medium of any prospectus or otherwise, or carry or cause to be carried any security for the purpose of sale or delivery after sale, unless and until a registration statement has been filed with the Commission and is in effect, or unless a valid exemption from registration is available; or

(b) offer to sell or offer to buy any security through the use or medium of any prospectus or otherwise, unless and until a registration statement has been filed with the Commission with respect to such security, or unless a valid exemption from registration is available;

in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

### IV.

IT IS HEREBY ORDERED that Defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall cease forthwith from: (1) soliciting, receiving or depositing into any account any additional investor funds, as described in the Verified Complaint; (2) advertising or promoting in any way their purported investment schemes offered by or in conjunction with any of the Defendants in this action as described in the Verified Complaint, in any newspaper, magazine or other publication or through the use of any other means of communication, including telephone, television, radio or otherwise; and (3) otherwise offering or selling investments offered by or in conjunction with any of the Defendants in this action, relating to interests in a purported trading program involving options on foreign currency, as described in the Verified Complaint.

All references to Defendants in this paragraph shall include the named Defendants, together with any and all entities owned or controlled, or whose activities are directed, by any of the Defendants.

### V.

IT IS FURTHER ORDERED that, pending the final determination of the Commission's action on the merits, and until further order of this Court:

(a) Defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent

any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever of any funds or other assets of each of the Defendants presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located; and

(b) Any financial or brokerage institution or other person or entity located within the territorial jurisdiction of the United States courts and holding any funds or other assets in the name, for the benefit or under the control of Defendants Unique, Hollander, Patti and DeAngelis, and which receives actual notice of this Order by personal service, express courier service, telefax or otherwise, shall hold and retain within its control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets. In addition, an account at Citibank, account number 07624123, and used for the solicitation and deposit of investor funds, is hereby ordered frozen pursuant to this paragraph.

### VI.

IT IS FURTHER ORDERED that any brokerage institution, bank, savings and loan, mutual fund, or any other person, partnership, or corporation maintaining or having custody or control of any brokerage or deposit account or other assets of the Defendants under their control, and that receives actual notice of this Order by personal service or otherwise shall, within three business days of receipt of that notice, serve on counsel for the Commission a statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice. Service of such statement on counsel for the Commission shall be by express courier service or telefax directed to David F. Newman, Esquire, at the Securities and Exchange Commission, The Curtis Center, 601 Walnut Street, Suite 1120E, Philadelphia, PA

19106 (telephone no. 215–597–3330), or at telefax number (215) 597–5885.

### VII.

IT IS FURTHER ORDERED that Defendants Unique, Hollander, Patti and DeAngelis, and each of them, shall:

(a) take such steps as are necessary to repatriate to the territory of the United States all funds and assets of investors described in the Commission's Verified Complaint in this action which are held by them or are under their direct or indirect control, jointly or singly, and deposit such funds into the Registry of this Court; and

(b) provide the Commission and the Court with a written description of the funds and assets so repatriated.

### VIII.

IT IS FURTHER ORDERED that Defendants Unique, Hollander, Patti and DeAngelis shall, within three business days of the service of this Order, file with this Court and serve upon counsel for the Commission a sworn accounting of:

(a) any and all assets, funds or other properties of each of the named Defendants, held in any of their names, jointly or individually, or in which any of them have any direct or indirect beneficial interest, or over which any of them maintain control, wherever situated, stating the location and value of each of such assets, funds, and other property; and

(b) each account with any financial or brokerage institution maintained in the name of any of the Defendants, or in which any of them have any direct or indirect beneficial interest, or over which any of them maintain control, stating the location, account number and value of each such account.

Service of the sworn accounting on counsel for the Commission shall be by express courier service or telefax directed to David F. Newman, Esquire, at the Commission, The Curtis Center, 601 Walnut Street, Suite 1120E, Philadelphia, PA 19106, telefax number (215) 597–5885.

## IX.

IT IS FURTHER ORDERED that, until and unless all funds and assets of United States investors are repatriated to the territory of the United States, the Commission may continue to obtain expedited discovery concerning Defendants, their assets and activities, and in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure, discovery shall proceed as follows:

(a) Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the Commission may take depositions upon oral examination on five days notice of any such deposition. In addition, with respect to officers, directors, owners, and employees of Unique, the Commission may depose such witnesses after serving a deposition notice by hand or telefax upon Defendants' counsel, J.B. Grossman, P.A., at 2300 East Las Olas Boulevard, Fourth Floor, Fort Lauderdale, Florida 33301, and without serving a subpoena on such witnesses. Depositions which have not been signed by the witnesses may be used for purposes of any hearing on an application to modify this Order.

(b) Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, Defendants shall answer the Commission's interrogatories within four days (or on such other date as counsel for such Defendants and counsel for the Commission may agree) of service by hand or telefax of such interrogatories upon Defendants' counsel at the address designated above;

(c) Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, Defendants shall produce all documents requested by the Commission within four days (or on such other date as counsel for such Defendants and counsel for the Commission may agree) of service of such request by hand or telefax upon Defendants' counsel at the address designated above, with production of the documents made to David F. Newman, Securities and Exchange Commission, The Curtis Center, 601 Walnut Street, Suite 1120E, Philadelphia, PA 19106;

(d) Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Defendants shall respond to the Commission's requests for admissions within four days (or on such other date as counsel for such Defendants and counsel for the Commission may agree) of service by hand or telefax upon Defendants' counsel at the address designated above; and

(e) All written responses to the Commission's requests for discovery under the Federal Rules of Civil Procedure shall be delivered by hand, overnight courier or telefax to the Commission at The Curtis Center, 601. Walnut Street, Suite 1120E, Philadelphia, PA 19106, to the attention of David F. Newman, telefax number (215) 597-5885.

## X.

IT IS FURTHER ORDERED that Defendants Unique, Hollander, Patti and DeAngelis, their agents, officers, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are hereby enjoined from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any transactions or matters described in the Commission's Verified Complaint in this case, or to any communications between or among any Defendant herein. As used in this Order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) and all written or graphic matter, however produced, and any other tangible record, or electronic data compilation capable of reproduction in tangible form, including, without limitation, correspondence, memoranda, files or records maintained on computers or data storage disks or devices, minutes, telephone records, reports, studies, telexes, diaries, calendar entries, contracts, and letters of agreement, and including any and all existing drafts of all documents.

## XI.

IT IS FURTHER ORDERED that, pursuant to Rule 4 of the Federal Rules of Civil Procedure, service of all pleadings and other papers, including this Order and all documents filed in support thereof, and all other documents to be served in this action, may be made personally, by telefax, by overnight courier, or by mail upon Defendants, their attorneys, their U.S. agents, or their foreign agents to the extent permitted by law, by representatives of the Commission, representatives of the United States Postal Service, federal marshals, any other qualified person over the age of 21 years, or by an alternative provision for service permitted by Rule 4 of the Federal Rules of Civil Procedure, including the issuance of letters rogatory, or as this Court may direct by further order.

## XII.

IT IS FURTHER ORDERED that this Preliminary Injunction and Order Freezing Assets and Granting Other Relief shall remain in effect pending final disposition of this matter, or until further Order of this Court.