### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### PARKERSBURG WIRELESS LIMITED LIABILITY COMPANY, et al., Defendants.

Civil Action No. 94–1079 SSH.

United States District Court, District of Columbia.

Dec. 10, 1997.

Noran Camp, Office of General Counsel, Bruce Michael Bettigole, Div. of Enforcement, S.E.C., Washington, DC, for S.E.C.

Waldemar Jacob Pflepsen, Jr., Jorden, Burt, Berenson & Johnson, Washington, DC, for Parkersburg Wireless Ltd., Liability Co.

Charles Henry Carpenter, Pepper, Hamilton & Scheetz, Washington, DC, for PX Marketing and Rodney Bonvicino,

## OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's motion for partial summary judgment, defendants Bonvicino's and PX Marketing's opposition thereto, and plaintiff's reply.[1] The evidence submitted by the SEC undisputedly establishes that defendants engaged in the selling of unregistered securities, in violation of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and 77e(c), and that the corporate defendants engaged in broker-dealer activities without being registered as broker-dealers with the SEC, in violation of Section 15(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a). Accordingly, the Court grants plaintiff's motion for partial summary judgment.

First, it is clear that the interests sold in Parkersburg Wireless, LLC ("PWLLC") are securities. Defendants, through high-pressure telephone tactics and mail solicitations, sold "memberships" in PWLLC to over 700 individuals in 43 states, requiring each member to purchase at least two "units" at $5,000 per unit, for a total minimum contri-

---

1. Defendants Capital Resource Management, Inc. ("CRM"), Alternative Management, Inc., D.R. Williams Consulting, Inc., and Touch Access Technologies, Inc., did not respond to plaintiff's motion, and the motion therefore is granted as conceded as to them. See Local Rule 108(b). Defendants Trimpin and Madcap Services filed an opposition to plaintiff's motion, however, the relevant claims between the parties have since been resolved by a consent judgment. See Order of August 22, 1996. The SEC's claims against most of the other defendants also have been resolved by consent or default judgments. See Order of October 19, 1994 (with respect to defendant Gerstner); Order of March 9, 1995 (with respect to defendants Riggle, Infotech, Multistate, and Cablefree). Parkersburg Wireless itself is in receivership, and the SEC's claims against defendant Bonvicino under Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, are still pending.

bution of $10,000. The "members" of PWLLC ostensibly were screened for net worth, but an incomplete survey of the membership of PWLLC shows that many of the investors in the company were unemployed or retired, and many were over 60 years old. (The PWLLC marketers apparently targeted prospective investors who had Individual Retirement Accounts ("IRAs"), and encouraged them to divert funds from their IRAs to buy units of the company.) Defendant Michelle Gerstner exercised near-total control over the management of PWLLC, diverting business to companies she owned (such as UniMic and ServPro), filing and settling lawsuits (such as those against and brought by Parkersburg in Colorado), and soliciting capital contributions over and above the amount allowed in PWLLC's then-current Operating Agreement. Gerstner submitted one issue to the "members" of PWLLC: the purchase of a wireless cable operation in Salinas, California.[2]

Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act, 15 U.S.C. §§ 77b(1) and 78c(a)(10), define a security to include "investment contracts." An investment contract is: (1) an investment of money, (2) in a common enterprise, (3) with profits to be derived from the entrepreneurial or managerial efforts of others. *SEC v. W. J. Howey & Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *see also SEC v. International Loan Network, Inc.*, 968 F.2d 1304, 1308 (D.C.Cir.1992).

The Parkersburg Wireless units easily satisfy this definition. Members of the LLC were required to invest at least $10,000 in the enterprise, which fulfills the requirement that the "investment contract" involve an investment of money. They were told that they would receive a *pro rata* share of the revenues generated from the wireless cable operation. This establishes that the members of the LLC shared "horizontal commonality," meaning that the fates of all investors in PWLLC were bound together with the profit or the loss of the entire group. *See*

*Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459, 460 (3d Cir.1982); *SEC v. Int'l Loan Network, Inc.*, 770 F.Supp. 678, 689–90 (D.D.C.1991), *aff'd*, 968 F.2d 1304 (D.C.Cir.1992).

Members of the LLC also had "vertical commonality" with the fate of the corporation itself, meaning that the investors' success or failure was linked inextricably to the success or failure of the corporation. *See Long v. Shultz Cattle Co., Inc.*, 881 F.2d 129, 140 (5th Cir.1989); *Int'l Loan Network*, 770 F.Supp. at 690. Although at least one judge in this district has held that either horizontal or vertical commonality will suffice to establish the second element of an "investment contract," *Int'l Loan Network*, 770 F.Supp. at 690, the Court finds that both horizontal and vertical commonality exist here. *See Life Partners*, 898 F.Supp. at 21 (noting the existence of "horizontal commonality," "broad vertical commonality," and "strict vertical commonality" in that case, and declining to decide which of the three measures is sufficient under *Howey*). The interests in PWLLC, therefore, assuredly were "securities."

Finally, PWLLC investors' hoped-for profits clearly were to be derived from the efforts of individuals other than the investors themselves; the investors had little, if any, true input into the company. *See Int'l Loan Network*, 968 F.2d at 1308; *Siebel v. Scott*, 725 F.2d 995, 999 (5th Cir.1984) (holding that limited partnership interests in a cable television system were securities, because the limited partners relied so heavily on the managerial efforts of one defendant for their profit); *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir.1981) (endorsing the Ninth Circuit's view that the "efforts" requirement was satisfied if "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise") (quoting *SEC v. Glenn W.*

---

2. In addition, since Gerstner apparently exercised total control not only over what issues were presented to PWLLC members, but how they were framed on the ballot, the issue of the Salinas wireless cable acquisition was framed somewhat less than neutrally. *See* Pl.'s Mot. For Summ.J., Ex. 15.

*Turner Enters.*, 474 F.2d 476, 482 (9th Cir. 1973)).[3]

Bonvicino contends that he was not a "necessary participant" or a "substantial factor" in the sale of PWLLC units. This argument is spurious: Bonvicino owned and controlled a company that sold units to PWLLC investors, and therefore was necessarily and directly involved in the sale of unregistered securities. Bonvicino argues that he was unwittingly used by other individuals to cover their unlawful scheme, and that, although he purchased PX Marketing, he did not truly own the company and did not participate in the marketing of PWLLC units. But during the period of time Bonvicino owned PX Marketing, the company paid commissions to salespeople, rent for office space, large phone bills (resulting, assumedly, from telephone sales calls made to prospective investors), and other expenses incidental to the marketing operation. The Court agrees with plaintiff that "it is difficult to imagine what more Bonvicino could have done to demonstrate that he was a necessary participant and a substantial factor" in selling PWLLC units to investors. Pl.'s Reply at 6.

Bonvicino argues as well that, since he had no idea that the units he was selling were securities, he should not be held accountable to the SEC. There is, however, no scienter requirement under Section 5, and whether Bonvicino was an unwitting participant in this complex scheme would be of no moment. *See SEC v. Thomas D. Kienlen Corp.*, 755 F.Supp. 936, 939 (D.Or.1991).

Bonvicino contends that there is no need for the Court to enter injunctive relief against him, since according to Bonvicino, he "does not intend to engage in any further

sale of unregistered securities." Bonvicino Opp. at 12. Permanent injunctive relief is appropriate if a reasonable likelihood exists that a defendant will violate the securities laws in the future. *SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C.Cir.1994). Bonvicino is a repeat player in this sort of scheme—in fact, he is currently a defendant in another wireless cable case in this court. The fact that Bonvicino assures the Court that he does not intend to violate the law in the future does not suffice to establish that injunctive relief is inappropriate:

> If a defendant could survive summary judgment by simply submitting a self-serving statement about his desire to conform to the law in the future, it "would establish ... a ritualistic dodge around a permanent injunction on a motion for summary judgment."

*Bilzerian*, 29 F.3d at 695 (quoting *SEC v. Murphy*, 626 F.2d 633, 656 (9th Cir.1980)). The Court finds that permanent injunctive relief against defendants is appropriate and does order it.

Finally, Bonvicino argues that the amount received by him and his company, and therefore the amount the SEC requests that he be ordered to disgorge, are grossly overstated. Bonvicino submitted an affidavit describing the steps he took to re-route some of the earnings of PX Marketing, thereby increasing the amount the SEC attributes to PX Marketing and to Bonvicino for disgorgement purposes. *See* Bonvicino Opp., Ex. 1 (Aff. of Rodney Bonvicino), at 5–6; Pl.'s Reply at 6 n. 2. The Court finds no merit to defendant's contention and credits the representations of the SEC that the amount owed by Bonvicino and PX Marketing is $1,075,-892.10, jointly and severally.[4]

3. Prior to entering into a consent judgment with plaintiff, defendant Trimpin contended that under Nevada law, the members of PWLLC exercised "the ultimate power ... Period!" over the company. Trimpin Opp. at 9. The Court rejects this unsound position. Regardless of the general treatment of LLCs under the applicable state law, the "ultimate power" over PWLLC rested not with the geographically dispersed, inexperienced, predominantly retired PWLLC investors, but with defendant Gerstner. While the investors theoretically may have possessed a right to manage the affairs of PWLLC under the terms of the

Operating Agreement, the inexperience and geographic diversity of the 700–odd investors essentially precluded this from ever coming to pass. *See Williamson*, 645 F.2d at 424 (even an interest in a general partnership may be a security where a partner is incapable of intelligently exercising powers or is dependent on unique entrepreneurial or managerial ability of others).

4. While Bonvicino may have been enriched to an amount somewhat less than the total the SEC requests disgorged, the money that flowed to his company from the investors, if it did not go

Accordingly, plaintiff's motion for partial summary judgment is granted. Consistent therewith, it hereby is

ORDERED, that defendants PX Marketing, Inc., Rodney Bonvicino, D.R. Williams Consulting, Inc., Capital Resource Management, Inc., Alternative Management, Inc., and Touch Access Technologies, Inc. (hereinafter referred to as "Defendants"), and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are permanently restrained and enjoined from violating Section 5 of the Securities Act, 15 U.S.C. § 77e, by, directly or indirectly, in the absence of any applicable exemption:

(a) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell the securities of any issuer, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect as to such securities;

(b) carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale, the securities of any issuer, unless and until a registration statement is in effect as to such securities; or

(c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise the securities of any issuer, unless and

until a registration statement has been filed with the Commission as to such securities, or while a registration statement as to such securities is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act, 15 U.S.C. § 77h.

It hereby further is

ORDERED, that defendants PX Marketing, Inc., D.R. Williams Consulting, Inc., Capital Resource Management, Inc., Alternative Management, Inc., and Touch Access Technologies, Inc., and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, are permanently restrained and enjoined from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by engaging in the business of a broker or dealer through use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase of, any security, without being registered with the Commission as a broker or a dealer. It hereby further is

ORDERED, that Defendants shall immediately pay or transfer, or cause to be paid or transferred, the full amount of disgorgement specified below, and prejudgment and post-judgment interest from May 16, 1994, calculated pursuant to 28 U.S.C. § 1961, by cashier's or certified check payable to PWLLC, through its Receiver, Paul A. Fischer ("Receiver"):

| Defendant | Disgorgement Amount |
|---|---|
| Alternative Management | $122,400 |
| CRM | $1,723,940 |
| D.R. Williams | $1,493,180 |
| PX Marketing | $1,075,892.10 |
| Bonvicino | $1,075,892.10 |
| Touch Access | $63,700 |

directly to Bonvicino, went toward furthering the PWLLC marketing scheme. It is entirely appropriate to require disgorgement of the full amount of money received from investors, to prevent the unjust enrichment of an individual defendant, to provide as much restitution as possible to the

PWLLC investors, and to deter others from attempting to operate similar schemes in violation of the securities laws. *See SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1230 (D.C.Cir.1989); *SEC v. Current Fin. Servs., Inc.,* 783 F.Supp. 1441, 1443 (D.D.C.1992).

[As noted, Bonvicino and PX Marketing shall be jointly and severally liable for their amount to be disgorged.] It hereby further is

ORDERED, that Defendants shall partially satisfy their disgorgement obligations out of all funds previously frozen pursuant to this Court's Preliminary Injunction Order of June 15, 1994.[5] The financial institutions which have frozen funds pursuant to this Court's prior Orders are hereby ordered to pay immediately such funds to PWLLC, through its Receiver, with the sole exception of Bank of America's account for Internet Broadcast Group. It hereby further is

ORDERED, that except for transfers to PWLLC, through its Receiver, the restraint on transfer of the assets of Defendants imposed by Paragraphs V(a), (c), and (d) of this Court's Preliminary Injunction Order of June 15, 1994, shall continue until payment of the disgorgement and interest hereby ordered, and until further order of this Court. It hereby further is

ORDERED, that at such time as funds are paid to the Receiver of PWLLC, Defendants relinquish all legal and equitable right, title, and interest in those funds, and no part of such funds shall be returned to Defendants or their successors or assigns. It hereby further is

ORDERED, that the Court reserves decision at this time as to the propriety of civil money penalties under Section 20(d)(1) of the Securities Act and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§ 77t(d)(1), 78u(d)(3). It hereby further is

ORDERED, that this Court shall retain jurisdiction of this matter for all purposes, including enforcement and implementation of this Order.

SO ORDERED.

---

5. The undersigned handled this case at the temporary restraining order stage in May 1994. Thereafter, the case was transferred to Judge John H. Pratt, who handled it until his death in August 1995. Subsequently, it was transferred back to the undersigned. It is regretted that the press of other matters, coupled with the complexity of the case, led to the passage of so much time until the issuance of this Opinion and Order.