SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

CURRENT FINANCIAL SERVICES,
INC., et al., Defendants.

No. Civ.A. 91–3089 SSH.

United States District Court,
District of Columbia.

May 18, 2000.

Mark Adler, SEC, Washington, DC, for plaintiff.

John D. Wogan, (Receiver), Current Financial Services, Inc., New Orleans, LA, for defendants.

David W. Banner, American Equity Financial Group, Latrobe, PA, defendant pro se.

Douglas R. Rayburn, Current Financial Services of Mississippi, Inc., Jayess, MS, defendant pro se.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is the Securities and Exchange Commission's ("SEC") motion for summary judgment and a permanent injunction against defendants Current Financial Services of Mississippi, Inc. ("CFSM") and CFSM's president Douglas R. Rayburn.[1] Upon consideration of the parties' submissions and the entire record, the Court grants the SEC's motion.[2] "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## I. Background

Richard and Ray Hope founded Current Financial Services, Inc. ("Current") in 1988, to engage in the business of factoring medical receivables; they purchased receivables from various health care providers at a discounted price with the expectation of collecting and retaining all or most of the full face value of the receivables. The primary risks were that a patient's health insurance did not fully cover the claim upon which a receivable was based and the possible insolvency of the insurer.

To raise capital and to finance its business operations, Current began entering into "investment agreements" with the general public; these "investment agreements" essentially were debt securities. Current offered a high rate of interest for these debt securities, ranging from 18% to 60% per year. Current used different forms of the debt security agreement, including the "Subordinated Debenture Agreement," which subordinated the investor to other company debt, and the "Investment Agreement," which had no subordination clause.

To raise even more capital, the Hope brothers enlisted other individuals, such as Rayburn, who formed their own corporations and became "sub-issuers." The sub-issuers purchased debt securities from Current and financed the purchases by selling their own debt securities to the public. Selling debt securities was the sole or primary business of the sub-issuers. To pay interest to the sub-issuers and investors on the debt securities, Cur-

---

1. Plaintiff initiated this action against seventeen defendants, but reached settlement agreements with many of them. Plaintiff then filed this motion against seven of the remaining defendants, but have since resolved the claims against the other five defendants by consent judgments. Only one defendant, David Benner, remains in this action, and plaintiff is currently in settlement negotiations with him.

2. In response to the SEC's summary judgment motion, Rayburn filed a "Motion For Discharge From Civil Action and the Release of Assets of Current Financial Services of Mississippi." Liberally construing that "motion," which was substantively a denial of liability, the Court treats it as an opposition to plaintiff's motion for summary judgment. Rayburn and the SEC filed several response memoranda, and although Rayburn's submissions often were not filed within the deadlines prescribed under our Local Rules, the Court will consider them.

rent relied on the success of its factoring operation. The sub-issuers obtained funds to pay their investors from the spread in interest rates between what they received from Current and what they paid to their investors.

Current and the sub-issuers solicited investors widely, marketing the debt securities to the public as "investments." Rayburn initially solicited investors to invest directly in Current, and later used CFSM to solicit investors. His initial investors were widows from his church who withdrew money from certificates of deposit to invest in Current. He also placed an ad in a local newspaper to solicit investors for CFSM. By September 1991, CFSM had sold debt securities with an aggregate face value of approximately $500,000 to about 37 investors in five states.

When offering the debt securities to investors, Current and the sub-issuers made several misrepresentations and misleading omissions, including emphasizing a high rate of return without a reasonable factual basis for such an assertion, and omitting information regarding the risks involved. None of these instruments were registered with the SEC. Current and the sub-issuers, however, had notice that selling the investment agreements raised legal problems, as various attorneys told Current and some of the sub-issuers on different occasions that Current was offering and selling "securities." Current's business records also contained a copy of an article discussing the Supreme Court's decision in *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), holding that promissory notes are presumed to be securities. Richard and Ray Hope, however, assured the sub-issuers that their activities were legitimate.

The SEC initiated this action against 17 defendants, alleging that the defendants (1) offered and sold unregistered securities in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e ("Section 5"), and (2) made material misstatements and omissions of material facts when selling the securities to investors in violation of the anti-fraud provisions in Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ("Section 17(a)"), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 ("Rule 10b–5"). The SEC now brings this summary judgment motion and seeks a permanent injunction against future violations as well as a judgment for disgorgement.

## II. Summary judgment

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As a threshold matter, the Court must determine whether the "Subordinated Debenture Agreements" offered by CFSM and Rayburn are "securities." A security includes a "note," "bond," "debenture," "certificate of interest or participation in any profit-sharing agreement," or "investment contract." 15 U.S.C. § 77b(a)(1). To decide whether a transaction is a security, the Supreme Court has determined that every note is presumed to be a security; a court must then determine whether any factors exist to rebut that presumption. *Reves*, 494 U.S. at 66–69, 110 S.Ct. 945. In *Reves*, the Supreme Court outlined the steps that a court

should follow. First, a court must assess the motivations of the buyer and seller in entering into the transaction. "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Id.* at 66, 110 S.Ct. 945. Second, a court must examine how the instrument was distributed to determine whether there is "common trading for speculation or investment"; offering and selling the instrument to a broad segment of the public satisfies this factor. *Id.* Third, a court should examine whether the investing public reasonably expected that the investments were securities. *Id.* Finally, a court should examine whether some factor such as the existence of another regulatory scheme significantly reduced the risk of the instruments. *Id.* at 67, 110 S.Ct. 945.

■ Based upon the evidence presented, the Court concludes that the instrument that CFSM and Rayburn sold is a security. CFSM and Rayburn offered the instruments to the public to raise capital to finance its purchases of the instruments Current offered (which the Court also concludes are securities). The investors who bought them earned profits in the form of interest. CFSM and Rayburn sold these instruments to the public, even advertising in a newspaper; collectively, Current and the sub-issuers sold the instruments to over 570 investors in 15 states, with Current raising $10 million and the sub-issuers raising in excess of $8 million. The instruments were also held out to the public as investment agreements. Finally, the Court sees no factor that significantly reduces the risk of the instrument. The Court next determines whether summary judgment should be entered against each defendant.

### A. CFSM

Rayburn is proceeding pro se. He filed an opposition to the SEC's summary judg-ment motion on behalf of himself and CFSM. The Court, however, informed him that corporations may not proceed pro se and directed CFSM to obtain counsel within 28 days, or the SEC's motion would be deemed conceded. Instead of obtaining counsel, Rayburn filed a motion requesting a release of frozen funds to obtain counsel, which the Court denied. In that same Order, the Court advised CFSM that failure to obtain legal counsel and respond within 28 days would result in the SEC's motion being treated as conceded and judgment being entered in the SEC's favor. To date, CFSM has not obtained counsel or properly filed an opposition; accordingly, the Court treats the motion as conceded. Without any evidence to the contrary, the Court finds that the SEC has demonstrated that summary judgment should be entered in its favor as to CFSM.

### B. Rayburn

#### (1) Selling unregistered securities

■ The SEC contends that Rayburn violated Section 5 of the Securities Act of 1933. Section 5 prohibits the sale or delivery after sale of unregistered securities. 15 U.S.C. § 77e(a). In its supporting memorandum, the SEC documents Rayburn's offer and sale of unregistered securities to the investing public. Rather than disputing that he offered and sold unregistered securities, Rayburn argues that he did not know that what he was selling was considered a security, and that he was led to believe he was selling a legitimate instrument. He even consulted attorneys, one of whom requested an opinion letter from the Secretary of State for the State of Mississippi. That opinion letter, from Michael Henry, a senior staff attorney in the Securities Division, concluded that, based on the circumstances presented before him, the agreement was not a security.

The Securities Act of 1933, however, imposes strict liability on offerors and sellers of unregistered securities. *Swenson v.*

*Engelstad,* 626 F.2d 421, 424 (5th Cir. 1980). Scienter is not required under Section 5 of the Securities Act. *See SEC v. Parkersburg Wireless Ltd. Liability Co.,* 991 F.Supp. 6, 8–9 (D.D.C.1997); *SEC v. Friendly Power Company, LLC,* 49 F.Supp.2d 1363, 1367 (S.D.Fla.1999). It therefore is irrelevant whether Rayburn knew that what he was selling was a security. Furthermore, Mr. Henry did caution that his conclusion "is premised upon the statements and representations as set forth in [Rayburn's] letters and attachments only and should not be relied upon for any other set of facts or circumstances"; it also indicated that the determination was based only on Mississippi state law, not federal securities law. *See* Ex. A, Def.'s Opp. 6/18/98. Mr. Henry later stated in a declaration signed on April 26, 1993, that he was provided with no information, or was misinformed, about many relevant circumstances, such as the economic reality of the contemplated transactions. *See* Ex. B, Def.'s Opp. 6/18/98. The Court therefore finds that no issue of material fact exists as to whether Rayburn sold unregistered securities. Thus, summary judgment is granted on this count.

### (2) Fraud violations

The SEC also alleges that Rayburn violated the anti-fraud provisions of Section 17(a) of the Securities Act of 1933, and Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. Section 17(a) in part makes it unlawful for any person in the offer or sale of securities "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . ." 15 U.S.C. § 77q(a)(2). Section 10(b) makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention [of SEC rules and regulations]." Rule 10b–5, pro-

mulgated pursuant to Section 10(b), in relevant part, makes it unlawful for any person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . ." 17 C.F.R. § 240.10b–5(b).

■ To find a violation of these anti-fraud provisions, the SEC must show that the misstatements or omissions of fact were (1) material, and (2) made with the requisite level of scienter. *SEC v. Better Life Club of America, Inc.,* 995 F.Supp. 167, 175–76 (D.D.C.1998) (citing *Aaron v. SEC,* 446 U.S. 680, 691, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). However, while this is true for Section 17(a)(1), no scienter is required to show a violation of Sections 17(a)(2) and 17(a)(3). *Aaron,* 446 U.S. at 702, 100 S.Ct. 1945.

■ The test to determine whether a misrepresentation was material is "whether a reasonable investor would consider the representations important." *Id.* at 177 (citing *Basic v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). Rayburn, along with Current and other sub-issuers, emphasized a high rate of return, when in fact, Current's financial statements show a company that was insolvent or, at best, marginally insolvent. Furthermore, Rayburn did not conduct an in-depth review of Current's accounting or financial records to determine if Current was generating sufficient revenue to pay CFSM or its investors. As did Current and other sub-issuers, Rayburn also falsely portrayed the debt securities as "very safe"; in various publications, he and other sub-issuers represented that Current bought receivables only from healthcare and medical providers, that Current carefully selected receivables, and that the receivables were always backed by health insurance or Medicare/Medicaid. Current and the sub-issuers did not reveal, however, that Current also purchased uninsured receivables and some receivables not from

medical providers. They also compared their high rates of returns to the low yield offered by bank certificates of deposit, but either minimized or did not reveal the difference in risk. Moreover, Rayburn falsely represented to CFSM's investors that CFSM itself purchased receivables from May 1990 through October 1990, when in fact, CFSM purchased only debt securities from Current at that time. Rayburn also used a "Subordinated Debenture Agreement," but did not explain to his investors that this meant that their debt would be subordinate to the other company debt.

While the misrepresentations or omissions of fact may have been material, the Court must also consider whether Rayburn acted with the requisite degree of scienter. No scienter is required for a violation of § 17(a)(2) or § 17(a)(3), and thus, Rayburn has violated those provisions. To show a violation of the other provisions, however, the Supreme Court has held that the SEC must prove scienter; that is, that the defendant acted with "an intent to deceive, manipulate, or defraud." *Aaron,* 446 U.S. at 686, 100 S.Ct. 1945. Demonstrating recklessness may satisfy the intent requirement. *Better Life Club of America,* 995 F.Supp. at 175. A person acts with the requisite scienter when the conduct "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the defendant must have been aware of it." *SEC v. Steadman,* 967 F.2d 636, 641–2 (D.C.Cir.1992) (citations omitted).

Rayburn argues that he lacked scienter in making certain representations to investors, claiming that he simply relied on information given by Richard and Ray Hope, and thought he was running a legitimate business. The Court, however, finds that there is no genuine issue as to whether Rayburn made misstatements or omitted material facts. First of all, Rayburn's representation that CFSM was purchasing receivables at a time when CFSM was purchasing only debt securities from Cur-

rent, as well as his failure to tell investors the nature of a "subordinated debenture agreement," demonstrate at least reckless, if not knowing, conduct. Even if Rayburn relied on Richard and Ray Hope's representations, his failure to investigate or verify those representations would indicate at least reckless behavior. "Securities dealers cannot recommend securities without a reasonable basis for the recommendation; if essential information is not known to a securities dealer, the dealer must inform investors that this information is unknown and must disclose the risks of such uncertainty." *SEC v. Kenton Capital, Ltd.,* 69 F.Supp.2d 1, 9 (D.D.C.1998). *See Hanly v. SEC,* 415 F.2d 589, 595–6 (2d Cir.1969) ("Brokers and salesmen are under a duty to investigate, and their violation of that duty brings them within the term 'willful' in the Exchange Act."). Thus, "a salesman cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant." *Kenton Capital,* 69 F.Supp.2d at 9. Rayburn blindly accepted the information given to him, and thus recklessly made misrepresentations or omissions of material facts to his investors. The Court therefore finds that he violated the anti-fraud provisions.

### III. Permanent injunction

Finding that Rayburn and CFSM are liable under federal securities law, the Court now considers whether to order a permanent injunction. Permanent injunctive relief is appropriate if a reasonable likelihood exists that a defendant will violate the securities laws in the future. *SEC v. Bilzerian,* 29 F.3d 689, 695 (D.C.Cir.1994); *Better Life Club of America,* 995 F.Supp. at 178. The Court should consider the risk of future violations based on the totality of the circumstances, where the relevant factors are "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business

**8**

will present opportunities to violate the law in the future." *Steadman*, 967 F.2d at 648.

 Rayburn acted as a sub-issuer for more than one year, raising approximately $500,000, and guided other sub-issuers in selling debt securities to investors; his violations were not isolated but part of a pattern. His violations also were not merely technical in nature; he recklessly violated the registration and anti-fraud laws without properly investigating whether his conduct was legal. The Court therefore finds that entry of a permanent injunction is appropriate to prevent a future violation. Accordingly, the Court orders the entry of summary judgment in favor of plaintiff SEC and a permanent injunction against CFSM and Rayburn. Accordingly:

1. It hereby is ORDERED, that the SEC's motion for summary judgment and permanent injunction is granted as to defendants Current Financial Services of Mississippi, Inc. (CFSM) and Douglas R. Rayburn.

2. It hereby further is ORDERED, that CFSM and Douglas R. Rayburn, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Opinion and Judgment by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) & (c), by, directly or indirectly, in the absence of any applicable exemption:

 (A) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell the securities of any issuer, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect as to such securities;

 (B) carrying or causing to be carried through the mails or in interstate commerce, by means or instruments of transportation, for the purpose of sale or for delivery after sale, the securities of any issuer, unless and until a registration statement is in effect as to such securities; or

 (C) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise the securities of any issuer, unless and until a registration statement has been filed with the Commission as to such securities, or while a registration statement as to such securities is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act of 1933, 15 U.S.C. § 77h.

3. It hereby further is ORDERED, that CFSM and Douglas R. Rayburn, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Opinion and Judgment by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce, or by the use of the mails:

 (A) to employ any device, scheme, or artifice to defraud;

 (B) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in the offer or sale of any securities.

4. It hereby further is ORDERED, that CFSM and Douglas R. Rayburn, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Opinion and Judgment by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

(A) to employ any device, scheme, or artifice to defraud;

(B) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(C) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

5. It hereby further is ORDERED, that until further order of this Court, paragraph IV of the Preliminary Injunction and Order for the Freezing of Assets and Other Relief entered against CFSM and Douglas R. Rayburn on February 13, 1992, shall remain in effect.

6. It hereby further is ORDERED, that CFSM and Douglas R. Rayburn, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Opinion and Judgment by personal service or otherwise, and each of them, unless otherwise ordered by the Court for cause shown, are enjoined for a period of five (5) years from the date of entry of this Opinion and Judgment from destroying, mutilating, concealing, altering, or disposing of any items, including but not limited to any books, records, documents, contracts, agreements, assignments, obligations, audio and video tape recordings, computer media or other property, relating to the activities described in the Complaint, to Current Financial Services, Inc., or any of its affiliates or subsidiaries, or to the other defendants to this action, or to any of the securities, financial, or business dealing of any of the foregoing.

7. It hereby further is ORDERED, that this Court shall retain jurisdiction over this action for all purposes, including the ordering of disgorgement and civil penalties pursuant to a motion to be filed by the SEC, and the enforcement of this Judgment.

SO ORDERED.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is entered in favor of the Securities and Exchange Commission as to defendants Current Financial Services of Mississippi, Inc., and Douglas R. Rayburn.