[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 27, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-13445

_____

D.C. Docket No. 01-00369-CIV-DMM

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

WILLIAM A. CALVO, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 27, 2004)**

Before TJOFLAT and CARNES, Circuit Judges, and CONWAY*, District Judge.

_____

* Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

This appeal arises from an enforcement action brought by the Securities and Exchange Commission ("SEC") against William A. Calvo III ("Calvo"), Diversified Corporate Consulting Group ("Diversified"), Jerome E. Rosen ("Rosen"), and Joseph D. Radcliffe ("Radcliffe") for violations of the Federal Securities Act of 1933 ("the Securities Act"), and the Federal Securities Exchange Act of 1934 ("the Exchange Act").

The instant Order concerns only Calvo's appeal; Rosen and Radcliffe did not appeal and we address Diversified's appeal in a separate opinion released simultaneously herewith. Having reviewed the record and the parties' briefs, we determine that no reversible error has been shown; accordingly we affirm.

BACKGROUND

In a Complaint filed in the United States District Court for the Southern District of Florida on January 30, 2001, the SEC alleged that Calvo, Rosen, Radcliffe, and Diversified engaged in a "pump and dump" scheme involving a company known as Software of Excellence, Inc., a.k.a., Systems of Excellence, Inc. ("SOE"). Simply stated, the SEC claimed that the parties artificially pumped up the price of SOE stock only to dump it on unsuspecting investors in order to reap millions of dollars in illicit gains.

2

On summary judgment, the district court adjudicated Calvo and Diversified liable for the sale of unregistered securities in violation of § 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c). The remaining claims against Diversified and Rosen were then tried before a jury which returned a verdict in favor of the SEC, finding liability for material misrepresentations in the sale of securities in violation of § 17(a) of the Securities Act, 15 U.S.C. §77q(a), § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5.

On March 19, 2002 the district court conducted a remedies hearing in connection with the abovementioned securities laws violations. Taking into account the evidence adduced there, the court entered a judgment against Calvo and Diversified, jointly and severally, for $2,511,145.60 in disgorgement. The court also assessed civil penalties, and permanently restrained and enjoined Calvo from violating § 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

Calvo now appeals, contending that the district court erred in granting summary judgment on the SEC's § 5 claims and in formulating the remedy it imposed.

DISCUSSION

A.

Calvo's first assignment of error charges the district court with improperly granting summary judgment on the SEC's §5(a)[1] and (c)[2] claims; he argues that he did not participate in the sale of SOE securities so as to render him responsible for such sales.

Summary judgment is proper if the record evinces that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such

---

[1] Section 5(a), 15 U.S.C. §77e(a) of the Securities Act provides as follows:

(a)    Sale or delivery after sale of unregistered securities. Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly -

(1)    to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2)    to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

[2] Section 5(c), 15 U.S.C. §77e(c) of the Securities Act provides as follows:

(c)    Necessity of filing registration statement. It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order to stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8.

4

that a reasonable jury could return a verdict for the nonmoving party. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it

is one that might affect the outcome of the case. *See id.* When a court considers

whether or not to enter summary judgment, it views all of the evidence, and all

inferences drawn therefrom, in the light most favorable to the non-moving party.

*See Hairston v. Gainesville Sun Publ'g Co.,* 9 F. 3d 913, 918 (11th Cir. 1993).

In order to establish a prima facie case for a violation of § 5 of the Securities

Act, the SEC must demonstrate that (1) the defendant directly or indirectly sold or

offered to sell securities; (2) through the use of interstate transportation or

communication and the mails; (3) when no registration statement was in effect.

*See SEC v. Cont'l Tobacco Co.*, 463 F. 2d 137, 155 (5th Cir. 1972)[3]; *SEC v.*

*Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999) (accord);

*SEC v. Unique Fin. Concepts, Inc.*, 119 F. Supp. 2d 1332, 1339 (S.D. Fla. 1998),

*aff'd* 196 F. 3d 1195 (11th Cir. 1999) (accord).

Here, Calvo challenges only the first element of the prima facie case. On

that subject, he states that "[e]ven though it was undisputed that Diversified sold

unregistered SOE stock, that evidence alone was insufficient to render summary

---

[3] In *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981), this Court adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on October 1, 1981.

judgment against Calvo. . . Calvo did not sell the securities." Appellant's Opening Brief at 18.

To demonstrate that a defendant sold securities, the SEC must prove that the defendant was a "necessary participant" or "substantial factor" in the illicit sale. *See Friendly Power Co. LLC*, 49 F. Supp. 2d at 1371; *see also SEC v. Holschuh*, 694 F. 2d 130, 139-40 (7th Cir. 1982); *SEC v. Murphy*, 626 F. 2d 633, 649-52 (9th Cir. 1980). Scienter is not a consideration. *Swenson v. Engelstad*, 626 F. 2d 421, 424 (5th Cir. 1980) ("The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part") (internal citation omitted); *Friendly Power Co. LLC,* 49 F. Supp. 2d at 1367 ("Neither negligence nor scienter is an element of a prima facie case under Section 5 of the Securities Act") (internal citation omitted); *SEC v. Current Fin. Servs.*, 100 F. Supp. 2d 1, 6 (D.D.C. 2000), *aff'd sub nom. SEC v. Rayburn*, 22 Fed. Appx. 1 (D.C. Cir. 2001) ("Scienter is not required under section 5 of the Securities Act") (internal citations omitted).

Applying these standards, we find that the undisputed material facts amply support the district court's determination that, as a matter of law, Calvo illegally sold unregistered securities. Calvo negotiated and signed the contract with SOE pursuant to which Diversified received the unregistered shares as compensation;

he extended that contract on behalf of Diversified; he signed the documents that opened the Diversified brokerage account into which all of the unregistered SOE shares were deposited; he signed stock transfer authorization and stock powers for sales or transfers of stock out of Diversified's brokerage account; and he received proceeds - albeit through Diversified - from the sale of SOE shares. Clearly, Calvo was a necessary participant and a substantial factor in the illegal sale of unregistered SOE stock.

## B.

Calvo's second assignment of error charges the district court with improperly adjudicating Calvo and Diversified jointly and severally liable for $2,511,145.60 in disgorgement damages irrespective of the fact that Calvo's liability was predicated on strict liability whereas Diversified's liability was predicated on fraud.

It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct. *See SEC v. Hughes Capital Corp.*, 124 F. 3d 449, 455 (3rd Cir. 1997); *SEC v. Fist Pac. Bancorp*, 142 F. 3d 1186, 1191 (9th Cir. 1998), *cert. denied sub nom. Sands v. SEC*, 525 U.S. 1121 (1999). This holds true even where one defendant is more culpable than another.

In this instance, Calvo and Diversified had the requisite close relationship. Calvo and his family founded Diversified; they maintained a 50% ownership interest in Diversified throughout the entire course of the sale of unregistered stock; and Calvo served as Diversified's sole managing member.

Moreover, both parties engaged in securities laws violations. Calvo was a necessary participant and a substantial factor in Diversified's sale of unregistered securities.

Accordingly, we find that the district court did not err in holding Calvo and Diversified jointly and severally liable.

## C.

Calvo's third assignment of error challenges the district court's issuance of an injunction permanently restraining and enjoining Calvo from violating §5(a) and (c) of the Securities Act.

The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated. *See SEC v. Unique Fin. Concepts, Inc.*, 196 F. 3d 1195, 1199 n.2 (11th Cir. 1999). Indicia that a wrong will be repeated include the "egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the

8

defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *SEC v. Carriba Air, Inc.*, 681 F. 2d 1318, 1322 (11th Cir. 1982) (internal citations omitted); *SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1372 (S.D. Fla. 1999). While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief. *See SEC v. Alpha Telecom, Inc.*, 187 F. Supp. 2d 1250, 1263 (D. Or. 2002); *SEC v. L&S Petroleum, Inc.*, 444 F. Supp. 38, 41 (W.D. Okla. 1977).

Inasmuch as these factors were properly weighed, we find that the district court did not abuse its discretion.

As the district court recognized, this is not the first time Calvo has violated federal securities laws. In *SEC v. Electronics Warehouse, Inc.*, 689 F.Supp. 53 (D.Conn. 1988), *aff'd sub nom. SEC v. Calvo*, 891 F. 2d 457 (2d Cir. 1989), he was found liable for securities fraud in connection with a public offering, and, as a result, was enjoined from committing like violations in the future.[4] Although the

---

[4]In *Electronics Warehouse*, the United State District Court for the District of Connecticut adjudged Calvo liable for violating §17(a) of the Securities Act, 15 U.S.C. §77q, 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rules 10b-5 and 10b-9. In addition, the court found that he was liable as an aider and abetter in violation of §15(c) of the Exchange Act, 15 U.S.C. §78o(c), and SEC Rule 15c2-4.

injunction was later dissolved, that does not eliminate the fact that Calvo committed securities fraud.

Moreover, the record indicates that there is a reasonable likelihood that Calvo will engage in wrongful actions in the future. Calvo is a recidivist, and has repeatedly failed to acknowledge the wrongful nature of his conduct. In addition, his current occupation - which is investment-related - presents opportunities for future securities violations; violations which Calvo has not adequately assured against. This is particularly apparent from Calvo's decision to hire Lenny Tucker - a convicted felon with past security law violations - to administer investments and control brokerage accounts in his new company. Taken together, the evidence preponderates in favor of finding a reasonable likelihood that a wrong will be repeated.

## D.

Calvo's fourth assignment of error charges the district court with abusing its discretion in ordering Calvo to pay $2,511,145.60 in disgorgement - $1,636,556.51 in illicit gains and $874,589.19 in prejudgment interest - in spite of evidence indicating that Calvo received no more than $337,000 from Diversified.

The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. *See SEC v. First City Fin. Corp.,*

890 F. 2d 1215, 1231-32 (D.C. Cir. 1989); *see also SEC v. Warde*, 151 F. 3d 42, 50 (2d Cir. 1998) (accord); *SEC v. First Pac. Bancorp.*, 142 F. 3d 1186, 1192 n.6 (9th Cir. 1998) (accord). The burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation. *See First City Fin. Corp.,* 890 F. 2d at 1232. Exactitude is not a requirement; "[s]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Warde*, 151 F. 3d at 50 (internal citation omitted); *First City Fin. Corp.,* 890 F. 2d at 1231-32.

By producing evidence that Diversified's illegal sale of unregistered SOE securities resulted in proceeds totaling $2,438,643 - $1,636.556.51 of which Calvo and Diversified received - the SEC satisfied its burden of proof. Any further apportionment would have been impractical in light of the inadequate documentation and the complex and heavily-disguised transactions employed in this scheme.

Calvo's argument that the testimony of Vanessa Lindsey - his office administrator - compels apportionment is unavailing. Her testimony on that subject was irrational at best:

11

Q. Now what accounting methodology did you employ throughout doing this tracing that you've done of Mr. Calvo's capital contributions as well as his proceeds? Is there a specific accounting method you chose?

A. No.

Q. You didn't choose LIFO versus FIFO?

A. I'm sorry, I am not an accountant. I just basically did the math. That's what I did.

***

Q. Do you have any understanding of how one traces funds normally, in an accounting context, to determine what each person received, when there's a pool of assets from which money comes in and goes out?

A. I have a little bit. And no, I'm not an experienced accountant.

Q. In this instance, you are not sure whether you used LIFO or FIFO in this whole project that you have taken on?

A. Correct.

(R-11-224, 225).

As the district court recognized:

[T]his method of proof is fraught with difficulty. I mean, she's talking about, this isn't really a summary or a summary witness, because what she's summarizing aren't . . . documents; its her interpretation of the documents; its her interpretation of the documents based on things that you [Calvo's attorney] and Mr. Calvo told her, what Mr. Radcliffe has told her, what she knows from, I guess, knowing people as far as brother-in-law's and lawyers and all this kind of thing.

12

(R11-220)

In sum, where a defendant's record-keeping or lack thereof has so obscured matters that calculating the exact amount of illicit gains cannot be accomplished without incurring inordinate expense, it is well within the district court's discretion to rule that the amount of disgorgement will be the more readily measurable proceeds received from the unlawful transactions. *See CFTC v. Am Bd. of Trade, Inc.,* 803 F. 2d 1242, 1252 (2d Cir. 1986).

E.

Calvo's fifth assignment of error challenges the district court's rejection of Calvo's statute of limitations defense; a defense which would have precluded this entire action.

When the United States brings suit in its sovereign capacity, a statute of limitations does not ordinarily apply unless Congress has expressly provided otherwise. *See United States v. Banks*, 115 F. 3d 916, 919 (11th Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998). Where, however, the government's action vindicates a private interest, the defense is typically available. *See id.*

In this instance, the United States is acting in its sovereign capacity. In suing to enforce the securities laws, the SEC is vindicating public rights and furthering public interests. *See SEC v. Rind*, 991 F. 2d 1486, 1491 (9th Cir. 1993),

13

*cert. denied*, 510 U.S. 963 (1993). This is so despite the fact that the relief sought is disgorgement. "Although the Commission . . . may use the disgorged proceeds to compensate injured victims, this does not detract from the public nature of Commission enforcement actions: the touchstone remains the fact that public policies are served and the public interest is advanced by the litigation." *Id.* at 1491-92 (internal citation and quotations omitted).

Further, there is no indication that Congress intended for a statute of limitations to apply to this enforcement action. Rather, as the Ninth Circuit Court of Appeals recently recognized, the framework of the Securities Act and Exchange Act suggests the opposite:

> In the 1933 and 1934 Acts, Congress developed a comprehensive plan to regulate the securities market. As part of that plan, Congress created a number of private claims, each bound by an express statute of limitations. At the same time, and in the same acts, Congress granted the Commission broad power to enforce the substantive provisions of the securities laws but refrained from imposing an explicit time limit on Commission enforcement actions. Congress clearly devoted its time and attention to limitation issues. The fact that it did not enact an express statute of limitation for lawsuits instituted by the Commission, therefore, must be interpreted as deliberate.

*Id.* at 1490.

Accordingly, we find that the district court did not err when it rejected Calvo's statute of limitations defense.

14

F.

Calvo's final assignment of error charges the district court with improperly granting summary judgment in the face of evidence that Calvo was an innocent purchaser of unregistered securities; a defense that Calvo maintains completely bars a § 5 claim.

Calvo's innocent purchaser defense hinges on a two-sentence summary of a telephone interpretation provided by a member of the SEC's staff. In relevant part, that interpretation provides as follows:

> Securities were inadvertently issued to a Company's employees under a stale S-8 registration statement. For purposes of resale by the purchasing employees, the securities would be treated as if they were unrestricted because of the policy not to penalize innocent purchases in an illegal offering.

http://www.sec.gov/interps/telephone/1997manual.txt (Part C (No. 13)).

Assuming, without deciding, that this interpretation is applicable to the facts presented in this case - which cannot be determined because the record does not contain the facts underlying the SEC's advice - we find that it does not afford Calvo with an innocent purchaser defense. The SEC's website is replete with unambiguous statements explaining that this interpretation is not binding.[5] In

---

[5] The first statement provides as follows:

(continued...)

15

addition, "[t]he Securities Act of 1933 imposes strict liability on offerors and

sellers of unregistered securities . . . regardless of . . . any degree of fault,

negligent or intentional, on the seller's part." *Swenson v. Engelstad*, 626 F. 2d

421, 424 (5th Cir. 1980) (internal citation omitted).

---

[5](...continued)
This page provides links to written and oral statements made by members of
the SEC's staff on various accounting and legal matters. These staff interpretations
provide guidance to those who must comply with federal securities law. However,
because they represent views of the staff, *they are not legally binding*.

Staff Interpretations; http://www.sec.gov/interprs.shtml (emphasis added).

Another statement, which precedes the statement upon which Calvo relies, provides as
follows:

The Division of Corporation Finance responds to thousands of telephone inquiries
annually
concerning the statutes, rules and regulations it administers. While the statements made
by
members of the staff on the telephone are intended to be helpful to the persons making
the
inquiries, *they are not binding due to their highly informal nature.* This manual, which is
a public compilation of certain responses to telephone inquiries, was first developed for
staff training and discussion purposes.

The responses discussed in this manual do not necessarily reflect the views and policies
of the Commission or the Division of Corporation Finance. Further, they do not
necessarily contain a discussion of all material considerations necessary to reach the
conclusions stated.
Accordingly, *these responses are intended as general guidance and should not be relied*
*on*
*as definitive.* There can be no assurance that the information in this manual is current, as
the
positions expressed may change without notice.

Manual of Publicly Available Interpretations (July 1997); http://www.sec.gov/interps/ telephone/
1997manual.txt (emphasis added).

16

CONCLUSION

The district court properly granted the SEC's motion for summary judgment against Calvo. Furthermore, the district court properly exercised its discretion in framing a remedy.

AFFIRMED