[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13908
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 9, 2010
JOHN LEY
CLERK

D.C. Docket No. 06-20975-CV-PCH

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

JOHN P. UTSICK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 9, 2010)

Before TJOFLAT, WILSON and COX, Circuit Judges.

PER CURIAM:

John P. Utsick sold securities and ran entertainment ventures through his

wholly-owned companies, Worldwide Entertainment, Inc. and Entertainment Group

Fund, Inc. The Securities and Exchange Commission (SEC) filed a civil enforcement action against Utsick, his two companies, and other defendants. The SEC's complaint alleged, in part, that Utsick and his companies violated the Securities Act, the Exchange Act, and rules promulgated thereunder by selling unregistered securities and defrauding investors. (R.1-1.) Utsick and his companies consented to the entry of a judgment, which included a permanent injunction and other relief barring further violations of the Securities Act and the Exchange Act, ordering that Utsick pay disgorgement, prejudgment interest, and a civil penalty, and providing for an asset freeze to remain in effect until entry of a final judgment. (R.1-5.) In the consent for an injunction, Utsick neither admitted nor denied the allegations of the complaint, but he agreed that for purposes of any proceeding to determine the amounts of disgorgement and civil penalty that he would be precluded from arguing that he did not violate the federal securities laws as alleged in the complaint. (*Id.* at 4-5.)

The court entered a judgment, which included a permanent injunction, appointed a receiver to manage and control the two companies, and entered a freeze of Utsick's personal assets. The asset freeze excluded costs for living expenses and attorneys' fees. The SEC and Utsick did not reach agreement as to the amount of disgorgement, prejudgment interest, or civil penalty, and pursuant to a provision in the consent for an injunction, the SEC filed a motion for final judgment to decide the

2

issues. After an evidentiary hearing, the district court entered a final judgment against Utsick ordering disgorgement in the amount of $4,035,479.31, prejudgment interest of $921,708.84, and a civil penalty of $120,000. (R.14-545.) In this appeal, Utsick does not contest liability for violating the securities laws; rather, he challenges three rulings of the district court related to its order determining the amounts of disgorgement, prejudgment interest, and the civil penalty. We conclude that Utsick's arguments are without merit, and we affirm.

First, Utsick contends that the court abused its discretion in denying his motion to require Worldwide, one of his companies in receivership, to advance his attorneys' fees. After depleting his personal assets, Utsick requested that the receiver authorize Worldwide to advance future legal expenses. The receiver rejected this request, and Utsick moved the court to lift a stay against litigation relating to the companies so that he could petition the Chancery Court for the State of Delaware to seek the advances. (R.4-132.) Rather than lift the stay, the district court decided the issue (R.6-190), and it held that Utsick was not entitled to the advances. (R.6-211 at 3.) After review of the record, we conclude that the court did not abuse its discretion in declining to lift the stay against litigation to permit Utsick to petition the Chancery Court for the State of Delaware. We also conclude that because Utsick failed to provide an adequate undertaking to guarantee reimbursement to the receivership

3

estate if it were ultimately determined that he was not entitled to be indemnified, the court did not abuse its discretion in denying Utsick's request for advances. And, we agree with the court's well-reasoned analysis concluding that Utsick does not have a constitutional right to advances from Worldwide to pay for his legal expenses. (*Id.* at 2-3.)

Second, Utsick contends that the court abused its discretion by imposing sanctions for his failure to appear for a deposition. Prior to the hearing to determine the amounts of disgorgement, prejudgment interest, and civil penalty, the court set a schedule for mutual discovery. But, Utsick refused to appear for his deposition because he had relocated to Brazil and feared arrest should he return to the United States. The parties filed a number of motions related to Utsick's unavailability for discovery, and the court attempted to accommodate Utsick by "requiring Plaintiff to pay his expenses for deposition in Miami, granting two months of extensions from the initial discovery period, fulfilling his requests to have the deposition taken in a third country, and entering a protective order that his counsel agreed would assuage his concerns regarding arrest." (R.12-504 at 3.) Even so, Utsick failed to appear for his deposition. The court ultimately granted a motion by the SEC for sanctions, in which it struck Utsick's pleadings, ordered that he pay the SEC's attorneys' fees and costs incurred in attempting to take his deposition, and ordered that he not be allowed

4

to testify at the hearing on the SEC's final judgment motion unless he appear for a deposition.

A court's authority to impose sanctions for refusal to comply with discovery orders is broad. Reversible error exists only where "important historical findings are clearly erroneous or—by the imposition of sanctions which are not 'just'—there has been an abuse of discretion." *Jaffe v. Grant*, 793 F.2d 1182, 1189 (11th Cir. 1986) (citation and quotation omitted). Our review of the record reveals that the court went to great lengths to accommodate Utsick's concerns and did not abuse its discretion in sanctioning Utsick for failing to appear for his deposition.

Third, Utsick challenges the amount of the disgorgement order. He argues that the court's findings that certain expenses were ill-gotten gains from his violations of securities laws were clearly erroneous. "The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. The burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation." *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (citations omitted).

The SEC presented testimony of a forensic accountant and the receiver, who testified that a review of the companies' records revealed that the companies paid over $4 million to Utsick or to third parties on his behalf. (R.14-541 at 10.) And, the

SEC presented evidence that the funds paid to Utsick came from investors. (*Id.* at 21.) Utsick admitted for purposes of the disgorgement proceedings that he raised at least $300 million from investors and violated federal securities laws in the process. (*Id.* at 5-8.) And, he did not present persuasive evidence showing that the payments were legitimate compensation and not the ill-gotten gains of his illegal activities. Therefore, the court did not err in concluding that Utsick failed to show that the SEC's estimate was not a reasonable approximation of his ill-gotten gains and by ordering him to pay $4,035,479.31 in disgorgement.

AFFIRMED.