[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10363
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-22600-CMA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

CITY OF MIAMI,

Defendant,

MICHAEL BOUDREAUX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 5, 2014)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Michael Boudreaux, former Budget Director for the City of Miami (City), appeals the district court's denial of his motion to dismiss the Securities and Exchange Commission's (SEC) securities fraud suit against him based on qualified immunity. For the reasons that follow, we affirm.

## I.

The SEC instituted a civil enforcement action alleging that the City and Boudreaux (collectively "the defendants") committed securities fraud, and that the City violated a 2003 SEC cease-and-desist order, imposed after the City violated the anti-fraud provisions of the federal securities laws in connection with the issuance of municipal bonds in 1995. As relief, the SEC requested that the district court: (1) grant injunctive relief that would permanently enjoin the defendants from further violations of federal securities law; (2) order the City to comply with the 2003 cease-and-desist order; and (3) impose civil monetary penalties on the defendants.

The crux of the SEC's allegations concerned alleged material misrepresentations and omissions reflected in 2007 and 2008 fiscal year-end City financial documents that were incorporated by reference into the City's bond offerings in 2009. Boudreaux, who was the City's Budget Director during the

relevant time period until his termination in March 2010, was responsible for preparing the overall capital budgets, monitoring fiscal expenditures, and providing the data used in the City's Comprehensive Annual Financial Reports (CAFRs).  In its complaint, the SEC alleged that Boudreaux: (1) engineered a series of improper monetary transfers to the City's general revenue fund in a bid to mask the City's deteriorating financial condition; and (2) furnished materially false and misleading information, including budget information that he knew would be relied upon in preparing the CAFRs, to city officials, bondholders, and ratings agencies.  The SEC asserted that Boudreaux devised the transfers for the purpose of helping the City obtain positive bond ratings in furtherance of a scheme to defraud bond investors.

The City moved to dismiss the SEC's complaint, in pertinent part, because the complaint failed to plead any false or misleading statements or demonstrate materiality as to any of the challenged statements.  Boudreaux adopted the arguments in the City's motion to dismiss, and also separately moved to dismiss the claims against him based on the doctrine of qualified immunity because he was acting within the scope of his official responsibilities as City Budget Director when the alleged misconduct occurred.  The district court denied the City's motion to dismiss.  Additionally, the court denied Boudreaux's separate motion, reasoning that the doctrine of qualified immunity did not bar the SEC's suit seeking civil

penalties against Boudreaux based on alleged securities fraud.  Boudreaux then filed the instant interlocutory appeal.

## II.

"We review *de novo* a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003).

Qualified immunity is an immunity from suit that extends to government officials performing discretionary functions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  Under this common-law defense, public officials sued in their individual capacities are entitled to qualified immunity when their actions do not violate "clearly established statutory or constitutional rights."  *Id.* at 818. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The SEC is an agency of the United States created by Congress to enforce federal securities laws.  15 U.S.C. §§ 77t(a)-(d), 78u(a)-(d).  Congress has authorized the SEC to bring civil law suits for violations of the securities laws and to seek, as relevant here, injunctions against future violations and civil monetary

4

penalties. *Id.* §§ 77t(b)-(d), 78u(d). "In suing to enforce the securities laws, the SEC is vindicating public rights and furthering public interests." *SEC v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004). As such, an important distinction exists between a private enforcement action and an SEC enforcement action: In a private enforcement action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the Act) and Rule 10b-5 promulgated thereunder, the plaintiff must show "justifiable reliance" on the material misstatement or omission and that the misstatement caused the plaintiff's damages. *See Bruschi v. Brown*, 876 F.2d 1526, 1529 (11th Cir. 1989). "Justifiable reliance," however, is not an element of an SEC enforcement action because Congress designated the SEC as the primary enforcer of the securities laws, and a private plaintiff's "reliance" does not bear on the determination of whether the securities laws were violated, only whether that private plaintiff may recover damages. *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1244 (11th Cir. 2012).

## III.

On appeal, Boudreaux asserts that as a public official sued in his individual capacity for his official conduct as the City's Budget Director, he is entitled to the defense of qualified immunity against the SEC's suit seeking civil penalties. Neither this court nor any of our sister circuits has addressed the issue of whether municipal officials are entitled to qualified immunity in a SEC enforcement action

5

under the federal securities laws.  As a starting point, we note that the anti-fraud provisions of the Act contain no express language granting municipal officials immunity, but rather each provision broadly prohibits "any person" from engaging in securities fraud.  *See* 15 U.S.C. §§ 77q(a), 78j.  Moreover, there is no history at common law of civil immunities being applied as a defense to federal enforcement actions.  *Cf. Owen v. City of Independence*, 445 U.S. 622, 637 (1980) (explaining that an absence of express statutory immunity is fatal to an immunity claim unless the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine") (quotation omitted).

We agree with Boudreaux's assessment that courts have routinely applied the qualified immunity defense to actions seeking damages against public officials performing discretionary functions.  *See, e.g., Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2000) (noting that "the defense of qualified immunity is available to public officials who are sued under the Federal Wiretap Act" in a private cause of action); *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1299-1300 (11th Cir. 1998) (concluding that Congress' silence regarding the common law defense of qualified immunity indicated that it was available to "a public official sued in her individual capacity" by a former employee under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*).  But the instant case is distinguishable.  The SEC does not seek

6

damages from Boudreaux in a private suit; rather this is a government enforcement action that seeks civil monetary penalties against the defendants. *See Gabelli v. SEC*, 568 U.S. __, ___, 133 S.Ct. 1216, 1223 (2013) ("In a civil penalty action, the Government is not only a different kind of plaintiff, it seeks a different kind of relief," namely "penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers"); *see also Tull v. United States*, 481 U.S. 412, 422 (1987) (penalties are "intended to punish culpable individuals," not "to extract compensation or restore the status quo").

Additionally, civil monetary penalties imposed in a SEC enforcement action are "payable into the Treasury of the United States," and do not constitute compensation for actual pecuniary loss. 15 U.S.C. §§ 77t(d)(3)(A), 78u(d)(3)(C)(i); *see also Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (noting that "civil penalties . . . are not 'damages' payable to the victim, but fines or assessments payable to the government").

Boudreaux's reliance on our decision in *D'Aguanno v. Gallagher*, 50 F.3d 877 (11th Cir. 1995)—to argue that qualified immunity protects a public official in an action that seeks the imposition of any type of monetary award—is misplaced. In *D'Aguanno*, we clarified that for qualified immunity purposes, the term "damages" includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity. *Id.*

at 881.  But, as previously noted, the SEC is seeking civil penalties, and not damages, against Boudreaux in the instant action.

In sum, because the doctrine of qualified immunity was unavailable to Boudreaux as a defense against the SEC's civil enforcement action, we conclude that the district court properly denied his motion to dismiss.

**AFFIRMED.**