[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14809
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cv-80021-KLR

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

IMPERIALI, INC., et al.,

Defendants,

DANIEL IMPERATO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 2, 2014)

Before TJOFLAT, WILSON, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

The Securities and Exchange Commission filed a complaint against Daniel Imperato that alleged he had violated several securities laws. The district court granted summary judgment in favor of the Commission. Imperato now appeals *pro se*. We affirm.

## I. BACKGROUND

In 1994, Imperato founded Imperiali, Inc. He controlled the company as the majority stockholder at all times, though his title shifted between president, chairman of the board, and chief executive officer. In 2005, he branded the company as an "investment company" and Imperiali launched an unregistered offering of stock. The company cold-called prospective investors to solicit them to buy stock, and Imperato promoted the stock through a press release. Imperato, though not a registered broker, spoke with potential investors to tout the company and "close" securities sales. The company eventually raised about $2.5 million.

Imperato distributed a "private placement memorandum" to existing and prospective investors. The memorandum stated that the proceeds of a stock offering would be invested in up to fifteen publicly traded companies and that Imperiali would earn hundreds of millions of dollars in sales and profits. But the funds were instead paid to Imperato's other company, "Imperiali Organization," and Imperato used the funds for personal ends, including the support of his

2

independent campaign to become president of the United States. But Imperato announced in a press release that revenues were being generated from "equity investment" into "public companies."

Later in 2006, Imperiali elected to be regulated by the Commission as a business-development company subject to the Investment Company Act of 1940. 15 U.S.C. § 80a-1, *et seq*. Imperato directed Imperiali to file statements with the Commission that overrepresented Imperali's assets by millions of dollars. Imperiali represented in one filing owning $3.5 million of common stock in Imperiali Organization, but Imperiali Organization was a limited liability company incapable of issuing common stock. Another filing listed a $3.5 million investment in companies that were never incorporated. Later, a filing listed a $70 million investment in common stock of Imperiali Organization and unincorporated companies.

In 2012, the Commission filed a complaint against Imperato that sought injunctive relief, disgorgement, and civil penalties. The complaint alleged 17 counts of violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act, and associated regulations. After the case was referred to a magistrate judge, the Commission reached a tentative settlement agreement with Imperato. But Imperato failed to submit sworn financial and bank statements required by the tentative agreement.

3

While the settlement was pending, the magistrate judge issued a report and recommendation that the district court deny over 40 motions that Imperato had filed. The district court adopted the report, but a scrivener's error caused the clerk to enter a designation on the docket that administratively closed the case. The district court reopened the case five months later. In the intervening period, the Commission moved for summary judgment. The district court adopted the report and recommendation of the magistrate judge and granted summary judgment to the Commission on all counts. Imperato, appearing *pro se*, now appeals the summary judgment.

## II. STANDARDS OF REVIEW

We review a summary judgment *de novo*. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999). Summary judgment is appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

We divide our discussion in three parts. First, we explain that there are no genuine disputes of material fact. Second, we explain that Imperato's remaining arguments are meritless. Third, we explain a jurisdictional error in the corrected judgment.

### A. There Are No Genuine Disputes of Material Fact.

Imperato argues that summary judgment was inappropriate because there

4

were genuine disputes of material fact.  We construe Imperato's *pro se* brief liberally, *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990), to assert five genuine issues of material fact that preclude summary judgment. But Imperato has not established any genuine issue of material fact. We discuss each of his arguments in turn.

Imperato argues that he did not personally sell securities through cold-calling. As a result, he contends that he did not "directly or indirectly s[ell] or offer[] to sell securities," *Sec. & Exch. Comm'n v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004), without proper registration, in violation of section 5 of the Securities Act. 15 U.S.C. § 77e(a), (c). Imperato also argues that Imperiali was exempt from the registration requirements in section 5.

Imperato's arguments fail. Even if there were a dispute as to whether Imperato personally cold-called investors, the undisputed facts establish that Imperato was a "substantial factor," *Calvo*, 378 F.3d at 1215, in the sale of securities, and that Imperiali was not registered to do so. Imperato dictated or personally prepared press releases and memoranda to tout Imperiali stock. He filed a Form D on behalf of Imperiali that included information about the sale of stock and bore his signature as the president of the company. And uncontested testimony established that he was the "closer" for Imperiali's sales to investors. And at the district court, Imperato did not argue that Imperiali was exempt from the

registration requirement, so that argument is forfeited. Even if it were not forfeited, Imperato bears the burden of proving that Imperiali had an exemption from the registration requirements, *Sec. & Exch. Comm'n v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S. Ct. 981, 985 (1953), and he has failed to satisfy that burden.

Imperato argues that his valuations of Imperiali and its subsidiaries were not false. This argument is relevant to Imperato's liability under section 10(b) and Rule 10b-5 of the Securities Exchange Act, and sections 17(a)(1), (2) and (3) of the Securities Act, all of which require Imperato to have made a "material misrepresentation" in connection with the purchase, sale, or offer of a security. *Sec. & Exch. Comm'n v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012); 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5(a), (b); 15 U.S.C. § 77q(a)(1)–(3). Some of the sections have a requirement of scienter, which the government may satisfy by establishing "severe recklessness." Severe recklessness includes "highly unreasonable . . . misrepresentations that involve . . . an extreme departure from the standards of ordinary care." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Imperato's argument fails. The record established that Imperato dictated and approved press releases and financial statements that included millions of dollars in false investments, including a $70 million valuation of investments in companies that were never incorporated and that Imperato testified had "no operation." The

6

valuation process for Imperiali and its subsidiaries shows an "extreme departure from the standards of ordinary care," and presented so obvious a danger of misleading buyers that Imperato "must have been aware" of the risk. *Id.* Imperato argues that he had a right to value assets "arbitrarily" according to a "comparative analysis" that he fails to describe. But Imperato's bald contention fails to create a genuine dispute of material fact. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

Imperato argues that he did not cold-call investors or receive proceeds from securities sales, so the Commission cannot establish that he acted as an unregistered "broker" in violation of section 15(a) of the Securities Exchange Act. 15 U.S.C. § 78o(a)(1). A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 361 (5th Cir. 1968). Evidence that tends to establish someone has acted as a broker includes "regular participation in securities transactions, . . . history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors." *Sec. & Exch. Comm'n v. George*, 426 F.3d 786, 797 (6th Cir. 2005).

This argument fails too. Even if Imperato did not receive proceeds from sales or initiate cold-calls to investors, the Commission presented undisputed evidence that Imperato spoke with investors, acted as the "closer" for his sales

7

team, and drafted memoranda for potential investors. This evidence was sufficient to establish that Imperato acted as a "broker."

Imperato argues that he did not file documents with the Commission. If there were a factual dispute on this issue, it would be relevant to Imperato's liability under sections 20(e) and 13(b)(5) of the Securities Exchange Act, 15 U.S.C. §§ 77t(e), 78m(b)(5), its accompanying regulations, 17 C.F.R. § 240.13b2-1; *Id.* § 240.13b2-2(a)–(c); *Id.* § 240.13a-14, and section 34(b) of the Investment Company Act, 15 U.S.C. § 80a-33(b). But there is no factual dispute.

The record refutes Imperato's contention. Imperato filed multiple forms that contained material misrepresentations about the value of Imperiali and its subsidiary companies, including the 2007 10-K form that listed an asset of $70 million in common stock in three companies that could not issue common stock. Undisputed testimony also established that Imperato reviewed other fraudulent forms before they were filed with the Commission and that Imperato was the chief executive officer of Imperiali when it filed still other documents with the Commission that misrepresented whether they had been reviewed by an accountant or an auditor. Imperato assured Imperiali's accountant that a $70 million investment was real to secure a new audit report, and Imperato certified forms including false information that were filed with the Commission.

Finally, Imperato contends that he was not in "control" of Imperiali. As a

8

result, he contends that he could not be held liable under section 20(a) of the Securities Exchange Act, which provides that "[e]very person who, directly or indirectly, controls any person liable under [the securities laws and regulations] shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 78t(a). Imperato contends that because he briefly relinquished control of Imperiali in November 2007, section 20(a) does not reach his conduct.

But the record again refutes this argument. Even after November 2007, Imperato was the controlling shareholder of Imperiali, and he controlled corporate decisions. And many of the false documents were filed before November 2007. Imperato's mere assertions to the contrary are not enough to overcome summary judgment.

*B. Imperato's Remaining Contentions Are Meritless.*

Imperato makes four other arguments, but none are worth lengthy consideration. First, he argues that the district court erred when it reopened the case after an administrative closure. Second, he argues that the district court erred when it did not rule on his Rule 59 motion to amend or alter the judgment. Third, he argues that the district court erred when it denied his requests for documents. Fourth, he argues that the district court erred when it denied his motion for a change of venue. We review each of these arguments for abuse of discretion. *See*

9

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1320 (11th Cir. 2013); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001); *Palmer v. Braun*, 376 F.3d 1254, 1257 (11th Cir. 2004).

The district court did not abuse its discretion when it reopened the case. An administrative closure of a case "has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository," and "[d]esignating a case 'closed' does not prevent the court from reactivating a case either of its own accord or at the request of the parties." *Fla. Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001). A "clerical error" caused the administrative closure, which was never actually recommended by the magistrate judge or directed by the district court. The district court acted within its discretion to correct that error and reopen the case. And even if the administrative closure had been prompted by the prospect of a settlement between the parties, as Imperato contends, there was only a tentative agreement between the parties. When the settlement failed, the district court was within its discretion to reopen the case.

The district court also did not abuse its discretion when it denied Imperato's putative motion to amend or alter the judgment under Federal Rule of Civil Procedure 59. Imperato's "supplemental response," which he now characterizes as

10

a motion under Rule 59(e), did not seek relief under Rule 59(e), even though the district court had informed Imperato that the proper mechanism for challenging summary judgment was to file such a motion.  And even if Imperato's supplemental response were considered as a motion under Rule 59(e), its denial would not be an abuse of discretion because Imperato offered no new arguments or evidence that were not available at the time of the summary judgment determination. *Arthur*, 500 F.3d at 1343.

The district court did not abuse its discretion when it denied some of Imperato's requests for documents. Imperato has specifically alleged that he was denied access to a list of potential investors, but he already possessed that list. And his general allegation that he was denied "proper discovery" does not set forth what documents he was denied or what legal standard the district court failed to apply.

Finally, the district court did not abuse its discretion when it denied Imperato's motion for a change of venue. Imperato requested that the Miami division of the Southern District of Florida hear his case because it was closer to his home. But he fails to explain how the district court abused its discretion when it denied his motion when the case was decided on summary judgment. Imperato's remaining arguments are meritless, and he has identified no provision of law entitling him to relief.

### C. The District Court Erred When It Amended the Judgment Without Seeking Leave of Our Court.

We have noticed a jurisdictional error in the district court's corrected judgment against Imperato. After Imperato had filed a notice of appeal in our Court, the district court issued an order, under Federal Rule of Civil Procedure 60(a), to correct an omission it had made in the final judgment against Imperato. The district court amended the final judgment to reflect that Imperato was "jointly and severally liable" with Imperiali for the disgorgement and pre-judgment interest. But because the appeal was already docketed in our Court, the district court was required to seek leave from our Court to make a correction under Rule 60(a). None of the parties challenge the correction, which benefits Imperato. But because the district court did not have jurisdiction to amend the judgment without seeking leave from our Court, its corrected order has no effect. The district court may correct the error after our mandate is issued and jurisdiction is returned to the district court. *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990) (explaining that a district court "is without jurisdiction to rule in a case that is on appeal . . . until the mandate has issued").

### IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the Commission.