[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11017
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00538-ALB-SRW

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

Plaintiff-Appellee,

versus

HUSAM TAYEH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 2, 2021)

Before JILL PRYOR, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Husam Tayeh ("Tayeh"), proceeding *pro se*, appeals the district court's final judgment in favor of the United States Commodity Futures Trading Commission (the "CFTC") in its civil action based on violations of the Commodity Exchange Act[1] ("CEA").  Specifically, he appeals the district court's calculation of the disgorgement amount.  He also appeals the district court's order releasing a pallet of currency held by the FBI to the CFTC as an offset against the final judgment.

I.

On appeal, Tayeh argues that the district court abused its discretion when, after a bench trial, it failed to deduct his legitimate business expenses from the amount of disgorgement.

We liberally interpret briefs filed by *pro se* litigants; however, issues the *pro se* litigant fails to brief on appeal are deemed abandoned and are not considered. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  Furthermore, a *pro se* litigant also abandons a claim on appeal "when he makes only passing references to it, or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014).

We review a district court's calculation of disgorgement for abuse of discretion.  *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017).  The CEA

---

[1]    Commodity Exchange Act, 7 U.S.C. §§ 1-27f (2018).

2

authorizes the CFTC to seek, and district courts to impose, equitable remedies when a defendant is found to have committed a violation of any of its provisions, including the "disgorgement of gains received in connection with such violation." 7 U.S.C. § 13a-1(d)(3)(B).  Disgorgement is an equitable remedy intended to prevent unjust enrichment from ill-gotten gains and must not be used punitively. *CFTC v. Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999).  The CFTC has the burden to produce a reasonable approximation of a defendant's ill-gotten gains to sustain a disgorgement amount.  *Id.*

Once the CFTC meets this burden, "[t]he burden then shifts to the defendant to demonstrate that [the CFTC's] estimate is not a reasonable approximation." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004).  "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty."  *Id.* (internal quotation marks omitted) (alteration adopted).  We have held that:

> where a defendant's record-keeping or lack thereof has so obscured matters that calculating the exact amount of illicit gains cannot be accomplished without incurring inordinate expense, it is well within the district court's discretion to rule that the amount of disgorgement will be the more readily measurable proceeds received from the unlawful transactions.

*Id.* at 1218 (citing *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1252 (2d Cir. 1986)).  Concerning the issue of deducting business expenses from a disgorgement

3

calculation, we have held that "defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts." *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1325 (11th Cir. 2013) (internal quotation marks omitted).

In its recent decision, *Liu v. SEC*, the Supreme Court granted *certiorari* to determine "whether § 78u(d)(5) [of the Securities Exchange Act of 1934] authorized the SEC to seek disgorgement beyond a defendant's net profits from wrongdoing." 140 S. Ct. 1936, 1942 (2020). The *Liu* Court held that, under principles of equity, the SEC was precluded from recovering a defendant's gross profits and could only recover net profits which accounted for and deducted *legitimate* business expenses. *Id.* at 1949-50 (noting that some of the defendant's ill-gotten gains went toward lease payments and cancer-treatment equipment which "arguably have value independent of fueling a fraudulent scheme").

Although the district court decision in this case was issued shortly before the Supreme Court issued its decision in *Lui*,[2] the district court foresaw the ruling in *Lui*:

> [T]he Court concludes that the legal issue of whether a disgorgement amount must account for legitimate business expenses is ultimately irrelevant to the disposition of this case. This is so because, even if the law allowed a court to account for a defendant's business expenses when ordering disgorgement, there would need to be evidence of a defendant's expenses before a court could account

---

[2]    The impact of the *Lui* decision on this case has been briefed to this Court.

for them. . . .

Here, Tayeh failed to provide any credible evidence that would allow the Court to consider reducing the stipulated total gain amount with his legitimate business expenses. As noted above, Tayeh's testimony was not credible. Not to belabor the point, but Tayeh provided only hazy and uncertain estimates of how much he spent on legitimate business transactions. Tayeh testified that he was "not very good at recordkeeping or managing stuff." (Doc. 218 at 78). He claimed to have had multiple employees, but he could not recall filing any employee-employer tax forms and did not testify about how much he paid them. (Doc. 218 at 96). The CFTC introduced evidence that Tayeh personally withdrew millions in cash from bank accounts and direct-transferred millions more to high-end jewelers. (Doc. 218 at 55–57). Tayeh testified that he used this cash and jewelry to trade for Iraqi dinar in Jordan and Vietnamese dong in Hong Kong. (Doc. 218 at 76). But Tayeh provided nothing—no travel records, government documents, shipping receipts, witness testimony, passport stamps, etc.—to corroborate his testimony about using untraceable cash and jewelry to purchase large amounts of currency overseas.

Dist. Ct. Op., Doc. 227 at 10-11.

Here, the district court did not abuse its discretion when it set the disgorgement amount equal to the stipulated gain of the defendants because the CFTC had provided a reasonable approximation of the defendants's ill-gotten gains based on expert testimony and the records provided by the defendants. *See Sidoti*, 178 F.3d at 1138. Moreover, Tayeh failed to meet his burden of proving that the disgorgement amount was unreasonable. *See Calvo*, 378 F.3d at 1217. Significantly, he failed to provide concrete and credible evidence to demonstrate the amount of money spent on any of the alleged business expenses or whether any of the business expenses were legitimate, and he obscured any reasonable

5

calculation of legitimate expenses due to his inadequate recordkeeping. Accordingly, we affirm the district court's determination of the disgorgement amount.

## II.

Tayeh argues that the district court erred when it ordered the release of the foreign currency held by the FBI to the CFTC because the compromise settlement from the related civil forfeiture action, *United States v. One Parcel of Property*, No. 1:16-cv-831-SRW (M.D. Ala. 2017), dictated that the United States would neither initiate nor seek judicial forfeiture proceedings and the currency had been released pursuant to the resolution of that matter.

We review a district court's grant of equitable monetary relief for abuse of discretion. *Wash. Data Res., Inc.*, 704 F.3d at 1325. We review a district court's construction of a settlement agreement *de novo*. *See Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). A settlement agreement is a contract and is governed by principles of general contract law, thus, we give the terms of a settlement agreement their "plain and ordinary meaning." *See id.* The government has the same common law right of offset as any other creditor and may "apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due him." *Capuano v. United States*, 955 F.2d 1427, 1429 (11th Cir. 1992) (quoting *United States v. Munsey Tr. Co.*, 332 U.S. 234, 239 (1947)).

6

Here, the district court did not err when it ordered that the $2.5 million in foreign currency be released to the CFTC as an offset against the final judgment in this case because nothing in the record demonstrates that the United States or the CFTC sought or initiated judicial forfeiture proceedings. The CFTC was entitled to and sought release of the currency to offset the amount that Tayeh was liable to the agency under the final judgment. *Id.*

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**