[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13853

_____

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

*versus*

COMPLETE BUSINESS SOLUTIONS GROUP, INC., et al.,
d.b.a. Par Funding,

Defendants,

MICHAEL C. FURMAN,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-81205-RAR

———————————

Before JORDAN, JILL PRYOR, and HULL, Circuit Judges.

HULL, Circuit Judge:

This appeal arises from the Appellee Securities and Exchange Commission's ("SEC") civil enforcement action against Appellant Michael Furman for securities fraud and the sale of unregistered securities in violation of: (1) Section 10(b) and Rule 10b-5(a); (2) Section 10(b) and Rule 10b-5(b); (3) Section 10(b) and Rule 10b-5(c); (4) Section 17(a)(1); (5) Section 17(a)(2); (6) Section 17(a)(3); and (7) Sections 5(a) and 5(c).  15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1)-(3), 78j(b); 17 C.F.R. § 240.10b-5(a)-(c).

In its complaint against multiple defendant-participants of the scheme, the SEC alleged that Furman's companies, United Fidelis Group Corp. and Fidelis Financial Planning LLC (collectively, "Fidelis"), were part of a business model operated by Complete Business Solutions Group, Inc., d.b.a. Par Funding ("Par Funding").  As part of the Par Funding-Fidelis scheme, Par Funding used Fidelis and other entities to make unregistered, fraudulent securities offerings to investors nationwide.  The SEC alleged that Furman, acting on behalf of Par Funding and Fidelis, made material misrepresentations when soliciting individuals to invest in Par Funding through Fidelis.

Following an eight-day trial, a jury found Furman liable on all counts, and the district court imposed disgorgement in the amount of $1,834,000 plus resulting interest of $137,614.46, and a civil penalty in the amount of $190,000.

On appeal, Furman alleges over a dozen points of error. Specifically, Furman challenges: (1) the district court's appointment of a receiver over the assets of the defendants' companies; (2) the district court's denial of a continuance of Furman's trial; (3) the district court's assessment of Furman's ability to testify despite his earlier invocation of his Fifth Amendment privilege against self-incrimination; (4) the district court's excluding as irrelevant some of Furman's proposed witnesses' testimony; (5) the district court's upholding of law enforcement agents' investigatory privilege; (6) the district court's permitting rebuttal testimony from a law enforcement agent; (7) some remarks made by the SEC's counsel during her arguments to the jury; (8) the district court's denial of Furman's motion for a directed verdict on the Section 5 count; (9) the district court's denial of a jury instruction regarding certain registration exemptions; (10) judicial bias; (11) cumulative error; (12) the district court's denial of Furman's motion for a new trial; (13) the district court's calculation of disgorgement; and (14) the district court's imposition of a third-tier civil penalty.

After oral argument and careful review of the briefs and extensive record, we conclude that none of Furman's foregoing issues and arguments have merit and that given the ample evidence

of his SEC violations disclosed by the record, Furman has shown no reversible error.  Only these two alleged errors warrant discussion: (1) the district court's Fifth Amendment analysis, and (2) the district court's calculation of disgorgement.

First, Furman contends that the district court's ruling erroneously limited his testimony during trial to areas about which he did not assert the Fifth Amendment privilege during discovery.[1] But Furman acknowledges that after he began testifying, the district court withdrew that ruling based on its independent review of his deposition and allowed him to testify freely.  And he identifies no substantive area about which he was precluded from offering testimony at trial.

We recognize that Furman also points out that during his testimony the SEC referenced his Fifth Amendment invocation from his deposition and in earlier requests for admission, and Furman does not deny that he had invoked the Fifth Amendment. Rather, Furman argues that the district court procedurally erred by failing to cure the prejudice from that reference with a curative instruction.  The record reveals, however, that Furman did not request such an instruction.  *See Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1223 (11th Cir. 1992) ("Nor may a party generally assign as error the district court's failure to give an

---

[1] Because we write for the parties, we assume their familiarity with the record and set out only what is necessary to explain our decision.

instruction that was never requested."). Furman cites no precedent requiring the district court to do so *sua sponte*.

Second, Furman argues that the district court abused its discretion by failing to reasonably calculate disgorgement. The trial evidence sufficiently established (1) that Furman raised $12.1 million from investors through his company, Fidelis; (2) that he transmitted this money to another company, Par Funding, in exchange for promissory notes; and (3) that he received about $6.4 million back from Par Funding on those notes. Of that amount, Furman distributed about $4.6 million back to the Fidelis investors and to another entity involved in the scheme, A Better Financial Plan ("ABFP"), for providing administrative services. This left Furman with $1,834,000 in ill-gotten gains.

Furman criticizes the district court's reliance on the trial evidence to make this determination, including a chart that the receiver's financial consultant testified was kept with ABFP's records and detailed Fidelis's investor list and financial information, such as money received from investors and amounts received from Par Funding and sent to Fidelis investors. But nothing about Furman's conclusory attacks meets his burden to demonstrate with sufficient certainty that this calculation was inaccurate or an unreasonable approximation. *See SEC v. Calvo*, 378 F.3d 1211, 1214 (11th Cir. 2004) ("[S]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." (quotation marks omitted)).

In sum, there is ample evidence in the record of Furman's civil liability for his involvement in the fraudulent Par Funding and Fidelis scheme. Any other arguments raised in Furman's initial brief, prominently or otherwise, also are rejected without need for further discussion. Accordingly, we **AFFIRM** the district court's final judgment in favor of the SEC and against Furman in these amounts: (1) disgorgement in the amount of $1,834,000; (2) prejudgment interest in the amount of $137,614.46; and (3) a civil penalty in the amount of $190,000.

**AFFIRMED.**